## A02A1669. RCG PROPERTIES, LLC v. CITY OF ATLANTA BOARD OF ZONING ADJUSTMENT et al.
(579 SE2d 782)

SMITH, Chief Judge.

We granted the application of RCG Properties, LLC (RCG) for discretionary review after the trial court dismissed RCG's appeal of a decision of the City of Atlanta Board of Zoning Adjustment (BZA) without addressing the merits of that appeal. In dismissing RCG's appeal, the trial court decided that RCG lacked standing to seek judicial review of the BZA's decision. Because the trial court overlooked the controlling law and failed to apply the proper standard of review, we reverse and remand this case with direction.

On January 19, 2001, Holder Properties, Inc. (Holder) submitted an application to the City of Atlanta Bureau of Planning (bureau) for a special administrative permit (SAP) that would allow construction of "an eleven story precast concrete parking structure" at 221 Peachtree Center Avenue. This property lies within an area zoned as Special Public Interest-1 (SPI-1) in the Central Core District of Atlanta. Holder understood that it could not build its proposed parking structure unless the bureau approved its application for the permit. On February 14, 2001, Alycen Whiddon, the assistant director of the bureau, granted Holder's application for the permit and also granted a variation to Holder from SPI-1 district regulations. The variation

authorized "a reduction of public space requirements to accommodate retail, from required 4570 sf to 3334 sf."

RCG, an owner of adjacent real property, filed a timely appeal of the bureau's administrative action with the BZA. When considering an appeal of a decision made by the bureau, the BZA is required to find for the appealing party "upon an expressed finding by the board that the administrative official's action was based on an erroneous finding of material fact, or that he acted in an arbitrary manner." City Code § 16-30.010 (d). In seeking review of the bureau's action, RCG contended that Holder's application did not comply with certain mandatory criteria for obtaining a permit and asserted that the bureau failed to consider all of the applicable standards. RCG claimed "the approval of the SAP and the variation [were] based on an erroneous finding of material fact and constituted an arbitrary act" in that the bureau "failed to follow the requirements in Sections 16-25.002 (3) and 16-18.007 of the Zoning Ordinance."

Among the stated goals for SPI-1 is the intention to maximize mass transit. City Code § 16-18A.002 expressly provides,

> The intent of this chapter in establishing the SPI-1 Central Core District is as follows: It is within the public interest to: (1) Preserve and protect the hub of the Atlanta Metropolitan Area for specific functions appropriate to the central core. (2) Encourage the development of major office uses within this district. (3) Encourage the maintenance and expansion of this area as the major retail center for the City of Atlanta and the Metropolitan Area. (4) Encourage the development of high-intensity housing within multi-use complexes or independent structures within this district. (5) Encourage the highest densities of development in this area at the crossroads of the mass transit system. (6) Maximize the advantages of mass transit. (7) Facilitate safe and convenient pedestrian circulation and to minimize pedestrian/vehicular conflicts through the implementation of the pedestrian space plan within the Special Public Interest districts.

City Code § 16-18A.003 lists the "[p]ermitted principal uses and structures" in SPI-1. Including some repealed, this section lists 33 principal uses of buildings and structures. Paragraph (22) of that section authorizes: "Parking structures and surface parking lots with fewer than 30 parking spaces." Parking decks and park-for-hire facilities do not appear on this list for SPI-1.

City Code § 16-25.002 (3), entitled *Construction, generally,* states: "No special permit shall be issued unless it is determined that, in addition to meeting the special requirements set forth within

the district within which such special permit is located; satisfactory provisions and arrangements have been made concerning the following [criteria], applicable to each application." City Code § 16-25.002 (3) lists many factors, including: ingress and egress; off-street parking and loading areas when required; refuse and service areas; appropriate buffering or screening to alleviate such potentially adverse effects as may be created by noise, glare, odor, lighting, signs, or traffic congestion; hours and manner of operations; and the like. Additional standards must be met by "park-for-hire facilities," which the pay parking structure at issue here appears to be, according to City Code § 16-29.001 (36). That code section defines a "park-for-hire facility" as: "Any facility for the parking of motorized vehicles, for which service the operator thereof charges a fee." Subsection (j) of § 16-25.002 (3) requires that all applications for park-for-hire facilities contain the following information:

> (i) In addition to the requirements in section 16-25.002 (3) (a), the ingress and egress requirements for park-for-hire facilities shall include the following: The size of the proposed facility and especially in relation to the vehicular capacity of streets of ingress and egress; the physical arrangements for ingress and egress; the reservoir space for incoming and outgoing vehicles; the effect of any plan for traffic improvement, such as the expressway program or major street plan on the flow or the pattern of traffic adjacent to the affected streets; and the financial responsibility of the applicant.
>
> . . .
>
> (iii) Applications for park-for-hire facility shall include the following information: The capacity of the proposed facility; the proposed location of entrances and exits to the facility; the capacity and location of the reservoir space to be used for the receiving and temporary storage of incoming vehicles; the proposed parking plan showing the size and location of the parking stalls and the aisles to serve them; the location, width, and general design of ramps or elevators to be used inside of structures; and any other information required *to enable the mayor and council to make a fair and complete appraisal of the operation of the proposed park-for-hire facility*.

(Emphasis supplied.)
RCG argued that "[t]here is no indication in the file . . . that any of these criteria were used to evaluate Mr. Holder's application." RCG also asserted that the bureau should have denied the application

"because of significant problems with ingress and egress to the property." The appeal noted that "the three driveway format will create significant conflict between pedestrians and motor vehicles, which would severely compromise public safety." In addition, RCG pointed out that the application mischaracterized the building as a "parking structure" and claimed that "park-for-hire facilities are not included in the list of permitted SPI-1 uses."

Before the scheduled hearing before the BZA on RCG's appeal, Hyatt Hotels and Peachtree Center notified the BZA that they opposed the SAP and fully supported RCG's appeal of the SAP. Their letter noted that "Hyatt, Peachtree Center and RCG own virtually all of the property in the same block and the blocks surrounding 221 Peachtree Center Avenue. They, along with the entire downtown area, will suffer . . . serious detriments . . . if the proposed parking structure is allowed to be constructed."

At the hearing before the BZA, RCG pointed out that Neighborhood Planning Unit-M had voted unanimously against the permit. RCG argued that the pay parking structure would be an eyesore to RCG's property, a major detraction from the area's current pedestrian-friendly environment, and inconsistent with the existing retail and restaurant development on the west side of Peachtree Center Avenue where RCG's property is located. RCG claimed that by granting the SAP, the bureau engaged in bad planning that would prevent the continuation of the appropriate type of development as intended within SPI-1. Terming the proposed parking deck a "planning nightmare," RCG contended that the permit process had not allowed "adequate public input." Claiming "there simply can be no doubt here that this freestanding parking lot out in the middle of the block with no attached buildings is a park-for-hire facility," RCG also pointed out that the ordinance requires evaluation of certain technical criteria that the bureau failed to consider. RCG claimed that the SAP was not in compliance with the SPI-1 district regulations. Although the term "standing" was not used during the hearing, RCG vigorously explained why it considered itself aggrieved both in its written appeal submitted to the BZA and during oral argument before the BZA.

At the hearing, Holder asserted that its parking facility was a permitted use under City Code § 16-18A.005. Holder further contended that "[w]e're building a parking structure" and disagreed that it was building a park-for-hire facility. Holder claimed that "the park for hire is not an issue here." When a board member asked Whiddon, "is a special use permit for a park-for-hire facility required in SPI-1

district?" Whiddon responded in the negative.[1] According to Whiddon, an "independent primary parking facility" is a permitted use in the district and Holder was required only to obtain a SAP. Whiddon admitted that neither she nor anyone in the bureau had prepared any type of written report or otherwise documented compliance with the criteria set forth in the code. She explained that the code does not require a written staff report and asserted that "the City has thoroughly addressed all the criteria required by code." Whiddon added, "So whether or not one considers a parking structure something that is an eyesore and unfriendly is irrelevant in this case." Nothing in the hearing transcript indicates that the bureau considered or applied the criteria in subsection (j) of City Code § 16-25.002 (3) which regulate park-for-hire facilities.

In the limited time allotted for the hearing before the BZA, presentation of evidence was severely curtailed. Despite a motion to delay or defer its decision, the BZA refused to do so and voted immediately. After the 63-minute hearing, in a split vote of 2/1, the BZA denied RCG's appeal.

Unable to obtain an administrative remedy, RCG filed a "Petition Appealing Decision of the City of Atlanta Board of Zoning Adjustment" in the Superior Court of Fulton County. In petitioning for judicial relief, RCG alleged, inter alia, that the bureau erred by failing to determine whether the proposed parking deck complied with the criteria for "park-for-hire" facilities in City Code § 16-25.002 (3) (j). RCG stated:

> Appellant has properly exhausted its administrative remedies under the Atlanta City Code and is a party aggrieved by the decision of the BZA affirming the decision by the Bureau of Planning to approve and issue the SAP. Accordingly, Appellant is entitled to bring this appeal pursuant to Section 16-26.007 and Section 16-30.10 (e) of the Atlanta City Code.

---

[1] The bureau's decision that Holder needed to obtain a "special administrative permit" and not a "special use permit" was extremely significant. Section 16-25.001 creates three classes of special permits:

(a) Special use permits, decided by the council after public notice and hearing and recommendation by the zoning review board, are intended to be used in connection with uses of substantial significance or of unusual operational characteristics. (b) Special administrative permits are intended to be used where complex or unusual technical determinations are involved and/or in conjunction with temporary uses and structures where the matter is not of such a nature as to require public notice and hearing. Such permits shall be processed by the bureau of planning. (c) Special exceptions, decided by the board of zoning adjustment after public notice and hearing, are intended to be used in conjunction with cases where consideration of effects on the surrounding property is of principal importance.

RCG listed the grounds for its appeal, including:

> (a) That the Bureau of Planning failed to determine whether the proposed deck complied with the criteria contained in Section 16-25.002 (3) of the City of Atlanta Zoning Ordinance, including subsection (j) pertaining to "park for hire facilities." (b) That the permit in question was issued in violation of Section 16-25.002 (3) of the City of Atlanta Zoning Ordinance because the permit application did not include the required information. (c) That the proposed parking deck is a "park for hire facility" which is not permitted within the SPI-1 district. (d) In authorizing a variation from the SPI-1 district regulations, the City failed to comply with the requirements of Section 16-18.007 of the City of Atlanta Zoning Ordinance.

RCG also claimed that the bureau's failure to maintain any type of written record of its review of the application by Holder for the SAP deprived the BZA and the public of "any meaningful opportunity to determine the sufficiency of the Bureau of Planning's analysis."

In responding to RCG's petition, the BZA claimed that its action conformed with all applicable law including the City's ordinances. The BZA asserted that the record lacked evidence that RCG was "aggrieved" by the BZA's decision and that it "therefore has no standing to bring this action." BZA claimed that "[p]etitioner has made no showing that it has a substantial interest that has suffered special damages not common to property owners similarly situated." The BZA denied that the structure was a park-for-hire facility. The BZA added to its denial, "said ordinance does not define a park-for-hire facility but rather defines a parking structure and that it was a parking structure that Holder Properties was approved to build."

After noting that RCG "properly exhausted its administrative remedies and is timely before this Court," the trial court decided that RCG lacked the status of an "aggrieved party" because RCG failed to "explain or quantify its own damage" and had not shown that its property values would be affected more than others in the general community. Concluding that RCG did not "meet the 'substantial interest' requirement for standing," the trial court dismissed the appeal, finding that RCG "lacks standing to challenge the BZA's decision."

1. RCG contends that the trial court "erred in finding that a party can bring a standing challenge for the first time in an appeal of a zoning decision." This contention misstates the question. The threshold issue is whether RCG's petition for review by the superior

court constituted an appeal of a "zoning decision." We find that it did not, and that determination controls our analysis.

Under the Georgia Zoning Procedures Law, the General Assembly defined "zoning decisions" as "final legislative action by a local government" resulting in: adoption of a zoning ordinance, amendment to a zoning ordinance rezoning property from one zoning classification to another, adoption of an amendment to a zoning ordinance by a municipal government zoning property to be annexed into the municipality, and the grant of a special use permit. OCGA § 36-66-3 (4). "[Z]oning power, vested in the county governing authority, is legislative." (Citations omitted.) *Bentley v. Chastain*, 242 Ga. 348, 349, n. 3 (249 SE2d 38) (1978). Because "zoning decisions" are considered legislative, under the principle of separation of powers, such decisions are presumptively valid and reviewed with great deference. See *Gradous v. Bd. of Commrs.*, 256 Ga. 469, 470-471 (349 SE2d 707) (1986).

Notwithstanding this deference, appeals from rezoning decisions are conducted de novo, and new evidence, including expert testimony, may be introduced. See *Dougherty County v. Webb*, 256 Ga. 474, 477-478, n. 3 (350 SE2d 457) (1986). Because new evidence can be presented, the question of standing can be raised and determined by the trial court. See *Moore v. Maloney*, 253 Ga. 504, 506 (1) (321 SE2d 335) (1984). To overcome the presumptive validity of a governmental zoning decision, a neighboring property owner who seeks to challenge that legislative decision must offer clear and convincing evidence that the rezoning classification "is a significant detriment to him, and is insubstantially related to the public health, safety, morality, and welfare." (Footnote omitted.) *DeKalb County v. Dobson*, 267 Ga. 624, 626 (1) (482 SE2d 239) (1997).

On the other hand, the grant or denial of a variance or a permit is generally considered an administrative or a quasi-judicial action. *Jackson v. Spalding County*, 265 Ga. 792, 794 (2) (462 SE2d 361) (1995). This is so because "the [board's] discretion is tightly controlled by the ordinance. [Cit.]" *LaFave v. City of Atlanta*, 258 Ga. 631, 632 (1) (373 SE2d 212) (1988). As our Supreme Court has observed, "[t]he Board of Zoning Appeals is an administrative agency and its powers are distinct from the legislative and judicial powers established in the Georgia Constitution." *Bentley*, supra at 349 (1). When acting on a variance application, "the board of appeals function[s] as an administrative body making a quasi-judicial decision." *Jackson*, supra at 794 (2). Consequently, when the BZA here ruled on RCG's appeal from the bureau's grant of the permit and the variation, the board was exercising quasi-judicial powers. See id.

The standard of appellate review is very different in each type of case. *Moon v. Cobb County*, 256 Ga. 539-540 (350 SE2d 461) (1986).

In reviewing a decision by the BZA, "[t]he superior court is not the proper forum in which to present evidence and conduct discovery, since the facts of the action are determined at the hearing." *LaFave*, supra at 632 (4). "Therefore, no new evidence will be permitted at this stage." Id. Unlike the zoning appeals cases, RCG's petition in superior court was seeking judicial review of a quasi-judicial decision entered by the BZA, and so, "[t]he superior court [was] bound by the facts presented to the local governing body." *Webb*, supra at 477, n. 3. In this type of appeal, neither the "aggrieved person" nor the board can offer additional or new evidence to the superior court reviewing the board's decision. See *Emory Univ. v. Levitas*, 260 Ga. 894, 898 (1) (401 SE2d 691) (1991) (when superior court is reviewing grant of a variance, "the superior court is bound by the facts presented to the local governing body or administrative agency").

In responding to RCG's petition in superior court, the BZA for the first time challenged RCG's standing to contest its decision. But, the issue of "standing" could not be raised for the first time in the superior court, because "[t]he superior court is not the proper forum in which to present evidence and conduct discovery, since the facts of the action are determined at the [board] hearing." *LaFave*, supra at 632 (4). See *Bentley*, supra at 352 (1). Moreover, City Code § 16-26.007 (1) neither mentions "standing" nor sets any standards for determining "standing." It simply provides:

> Any person aggrieved by a decision of the board [of zoning adjustment] . . . may appeal from such decision to the superior court of Fulton County by filing with the clerk of said court a petition in writing setting forth plainly, fully and distinctly wherein such decision is contrary to law. Such appeal shall be filed within 30 days after decision of the board is rendered.

Although the BZA contends that standing is a jurisdictional burden that RCG had to establish in order to appear in superior court and also claims that RCG had to present evidence of "special damages," the city code imposes no such burdens in this type of case. And, as previously discussed, the superior court could not consider issues not presented to the BZA. See *Fairfax MK, Inc. v. City of Clarkston*, 274 Ga. 520, 522 (3) (555 SE2d 722) (2001) (permit applicants barred from raising arguments in superior court not made before city council).

The BZA's reliance upon *Moore v. Maloney*, supra, and *Brand v. Wilson*, 252 Ga. 416 (314 SE2d 192) (1984), and similar authority is misplaced because those cases pertain to rezoning decisions made by

elected officials exercising discretion in their governing capacities. *Moore* was an appeal of a decision by the Atlanta City Council to rezone certain lots for townhomes. *Brand* was an appeal of a rezoning decision made by the Cherokee County commissioner. In that type of case, standing is often the threshold question. See, e.g., *Brock v. Hall County*, 239 Ga. 160, 161 (236 SE2d 90) (1977). Quoting *DeKalb County v. Wapensky*, 253 Ga. 47, 48 (315 SE2d 873) (1984), the Supreme Court in *Moore* held: "To establish standing, appellants needed to show that they possessed a substantial interest that would be affected by the rezoning, and that the rezoning would cause them 'special damage or injury not common to all property owners similarly situated.' " *Moore*, supra at 506 (1). Similarly, in *Brand*, the Supreme Court held that to have standing "a citizen must have a substantial interest, which must suffer substantial damage by reason of the contested zoning change." *Brand*, supra at 417.

According to City Code § 16-26.007 (3), entitled *"Judicial Procedure, Superior Court,"* "[i]n determining the questions presented by the appeal, the court shall determine whether the decision of the board [of zoning adjustment] is correct as a matter of law." Therefore, on remand, the superior court must determine whether the "parking structure" is a permitted use in SPI-1; whether the "parking structure" is a park-for-hire facility; whether a park-for-hire facility is a permitted use in SPI-1; and whether the applicable ordinances require a special use permit or a SAP. After determining the controlling law, the superior court must then decide whether the record contains evidence supporting the BZA's affirmance of the decision of the bureau to grant the SAP and the variation at issue. See *Bentley*, supra at 352 (1); *City of Atlanta Bd. of Zoning Adjustment v. Kelly*, 238 Ga. App. 799, 801 (520 SE2d 269) (1999). Finally, the superior court must decide whether the BZA (1) acted beyond the scope of its discretionary powers; (2) abused its discretion; (3) or acted in an arbitrary or capricious manner. *Jackson*, supra at 794 (2).

2. RCG contends that the trial court erred in finding that RCG, whose property surrounds the pay parking structure at issue and is directly and adversely affected by the structure's zoning deficiencies, does not have standing to challenge the grant of the permit to Holder. In light of our holding in Division 1, this issue is moot.[2] See *AT&T Wireless PCS v. Leafmore Forest Condo. Assn.*, 235 Ga. App. 319, 320

---

[2] The validity of the permit is not moot because improperly issued permits are void and void permits do not vest rights, even if such permits have been relied upon and money has been expended. *Corey Outdoor Advertising v. Bd. of Zoning Adjustment &c.*, 254 Ga. 221, 225-226 (327 SE2d 178) (1985). See *Café Risque/We Bare All Exit 10 v. Camden County*, 273 Ga. 451, 453 (542 SE2d 108) (2001) (permit issued in violation of an ordinance, even under a mistake of fact, is void despite substantial expenditures incurred in reliance upon void permit).

(509 SE2d 374) (1998) (condominium owners had standing to challenge building permit issued by county department of public works that effectively changed the permitted use of the property without required notice and approval of DeKalb County Board of Commissioners).

*Judgment reversed and case remanded with direction. Eldridge and Ellington, JJ., concur.*

DECIDED MARCH 19, 2003 — .

*Alston & Bird, Peter M. Degnan, Candace N. Smith*, for appellant.

*Swift, Currie, McGhee & Hiers, Cristine K. Huffine, Lisa A. Wade, Bradley S. Wolff, Susan P. Langford, David D. Blum, Lemuel H. Ward*, for appellees.