**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 10, 2014**

# In the Court of Appeals of Georgia

A14A0138, A14A0139. DRUID HILLS CIVIC ASSOCIATION,
INC. et al. v. BUCKLER et al.; and vice versa.

BRANCH, Judge.

These companion appeals arise from a superior court's grant of the developers

Robert Buckler and Anthony McCullar's motion to dismiss the petition for certiorari

of the Druid Hills Civic Association and two of its members (collectively, "the

Association") as to the DeKalb County Planning Commission's approval of the

developers' plans for Clifton Ridge, a subdivision in the Druid Hills area of Atlanta.

Case No. A14A0138 is the Association and certain of its members' interlocutory

appeal from the trial court's grant of the developers' motion to dismiss the petition for

lack of standing. Case No. A14A0139 is the developers' cross-appeal from the

superior court's ruling in the same order that the Association's 2012 petition was a

valid renewal of its original 2011 petition.[1] We conclude that the Association's 2012 petition is a valid renewal action, but that because the developers failed to raise the matter of the Association's standing before the Planning Commission, they were not entitled to raise that issue for the first time in the superior court. We therefore affirm in Case No. A14A0139 and reverse and remand for further proceedings in Case No. A14A0138.

This is the fourth time this litigation has required this Court's attention. In 2004, the developers bought the three contiguous lots at issue on Clifton Road, Atlanta. The first major stage in this ligitation, including its first three appeals, involved proceedings before DeKalb County's Historic Preservation Commission (HPC).[2] The

---

[1] Because the DeKalb County Planning Commission was the administrative body rendering the decision sought to be appealed, DeKalb County was the respondent below, and is an appellee in Case No. A13A0138 as well as a cross-appellant in Case No. A13A0139.

[2] In *DeKalb County v. Buckler*, 288 Ga. App. 346 (654 SE2d 193) (2007), we reversed the trial court's grant of partial summary judgment to the developers as to whether a quorum was present at a hearing before DeKalb County's Historic Preservation Commission (HPC) on the developers' application for a certificate of appropriateness. Id. at 349. In *Buckler v. DeKalb County*, 290 Ga. App. 190 (659 SE2d 398) (2008), we reversed the trial court's dismissal of the developers' petition for writ of certiorari and remanded for further proceedings as to the Association and some of its members' rights to intervene. Id. at 191. Most recently, in *Buckler v. DeKalb County Bd. of Commissioners*, 299 Ga. App. 465 (683 SE2d 22) (2009), we affirmed a grant of the County's motion for partial summary judgment concerning the proper standard of review as to the County's designation of the Druid Hills Historic District and other issues. Id. at 465.

2

second and current stage in the dispute began in December 2010, when the director of the DeKalb County Planning Department told one of the developers that the HPC did not have jurisdiction over the subdivision of the property because the subdivision of vacant land in an historic district did not require a certificate of appropriateness. In February 2011, the developers applied directly to the Planning Department for approval of their plans for the subdivision, which would transform three preexisting residential lots into seven new ones. On March 2, 2011, the Planning Department informed the developers that although the Department's own staff had approved their application, the DeKalb County Law Department had advised the Planning Department that the developers "most likely" needed a certificate of appropriateness from the HPC.

On March 9, 2011, the DeKalb County Planning Commission held its first hearing on the developers' application. After the conclusion of that hearing, the developers were asked to explain why a certificate of appropriateness was not required. The developers argued in writing that under the Georgia Historic Preservation Act, OCGA § 44-10-20 et seq., a subdivision of unimproved residential lots did not amount to a "material change in the appearance" of a historic property, structure, or site requiring a certificate of appropriateness. OCGA § 44-10-27 (a).

3

The public agenda for the second hearing, held on April 13, 2011, included the Planning Commission's staff recommendation that although the proposed plat complied with zoning requirements, the sketch plat should be rejected as incompatible with "historic patterns within the district" under DeKalb County Ordinance § 14-183 (b) and as missing a certificate of appropriateness required under DeKalb County Ordinance § 14-96 (a) (8).[3] At the hearing, the Association's counsel and one Druid Hills property owner, Elise Riley, spoke against the proposed subdivision. At the conclusion of the April 13 hearing, and against its own staff's recommendation, the Commission voted 4-3 to approve the sketch plat.

On May 11, 2011, the Association petitioned DeKalb County Superior Court for a writ of certiorari from the Planning Commission's decision. After the developers moved to dismiss the petition for its lack of evidence that the Association or its members had standing to object to the developers' plans before the Planning Commission, the Association voluntarily dismissed its first petition without prejudice

_____

[3] DeKalb County Ordinance § 14-183 (b) provides that "[w]ithin historic districts, the platting of lots and streets shall be compatible with the historic patterns that exist within the historic district. . . . " Ordinance § 14-96 (a) provides in relevant part that "[t[he planning commission shall not approve a sketch plat unless it is found that [there is] . . . (8) [a] properly issued certificate of appropriateness when the subdivision or portions thereof lie within a designated historic area that required such a certificate as may be required by state law or this Code[.]"

4

on November 15, 2011, and filed a second petition six months later, on May 15, 2012. After the Planning Commission answered, the Association filed an exception and traverse noting that the record certified by the Planning Commission had improperly omitted materials including a letter and appendices filed by the Association at the March 9, 2011 hearing.

On June 28, 2012, the developers again moved to dismiss the Association's petition on the ground that the Association and its members had lacked standing to oppose the developers' plans. After a March 2013 hearing on a variety of pending motions, including the status of the Association's 2012 petition and thus its exception and traverse, the trial court authorized the Association's 2012 petition but granted the motion to dismiss on the ground that neither the Association nor any of the members who appeared before the Planning Commission had standing in the matter. These appeals followed.

1. As a preliminary matter, we asked the parties to consider whether the trial court's certificate of immediate review was adequate to confer jurisdiction on this Court because it was signed not by the judge who granted the motion to dismiss, but by a second judge from the same court "for" the first judge.

The record shows that the trial court granted the developers' motion to dismiss on May 9, 2013. On Monday, May 20, a second judge signed the certificate of immediate review "for" the judge who granted the motion to dismiss. The certificate was filed on the same day.

OCGA § 5-6-34 (b) provides that when a trial judge rendering a decision not otherwise subject to direct appeal "certifies within ten days of entry thereof" that the decision "is of such importance to the case that immediate review should be had," the appellate courts may permit an appeal to be taken "if application is made thereto within ten days after such certificate is granted." Although the statute sets out the normal course in which "the same trial judge who entered the order in question must issue the certificate," this Court has also recognized "a limited exception . . . when the evidence shows that the trial judge was unavailable to execute the certificate." *Mauer v. Parker Fibernet, LLC*, 306 Ga. App. 160, 162 (701 SE2d 599) (2010).

Citing cases including *Mauer*, the developers assert that because the certificate was signed by a judge different from that hearing the case, the Association's appeal should be dismissed. In *Mauer*, however, the appellant did not obtain a certificate from a judge of the same court as the original judge, and presented no evidence that the original judge was not available. Id. at 162. Here, by contrast, and as in *Bagwell*

6

*v. Parker*, 182 Ga. App. 313 (355 SE2d 463) (1987), the certificate was signed "for," meaning "on behalf of," the first judge by a second judge "of the same court." Id. at 314 (1). This was some evidence, appearing on the face of the certificate, that the first judge was temporarily unavailable at the time the certificate was presented to the trial court, and the developers have provided no evidence to refute the reasonable inference that the execution of the certificate was proper.[4] The developers' citation to *Thorpe v. Russell*, 274 Ga. 781 (559 SE2d 432) (2002), is also unavailing. There, our Supreme Court held only that a party could not require a second judge to execute a certificate of immediate review by means of a mandamus action because that judge "did not have a statutory duty to consider" any motion, including one to certify a particular case for immediate review. 274 Ga. at 782. Here, by contrast, a second judge chose to sign the certificate, which is precisely what the second judge in *Thorpe* declined to do. Id. Because the certificate itself provides some evidence that the first judge was unavailable to sign the certificate, and because the certificate was signed and timely filed by another judge on the same court, this interlocutory appeal is proper under OCGA § 5-6-34 (b).

---

[4] "There is a presumption of regularity that attaches to all official acts, which includes judicial proceedings." *Holmes v. Roberson-Holmes*, 287 Ga. 358, 361 (1) (695 SE2d 586) (2010) (citations omitted).

Case No. A14A0139

2. We next consider the developers' argument on cross-appeal[5] that the trial court erred in authorizing the Association's second petition, filed on May 15, 2012, as a renewal of their original May 2011 petition. Specifically, the developers argue that because the Association and its members lacked standing, the Association's first petition was void and nonrenewable under OCGA § 9-2-61. We disagree.

Our renewal statute, OCGA § 9-2-61, provides in relevant part as follows:

> (a) When any case has been commenced in either a state or federal court within the applicable statute of limitations and *the plaintiff discontinues or dismisses* the same, *it may be recommenced* in a court of this state or in a federal court *either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later. . . .*
>
> (c) The provisions of subsection (a) of this Code section granting a privilege of renewal *shall apply if an action is discontinued or dismissed without prejudice for lack of subject matter jurisdiction* in either a court of this state or a federal court in this state.[6]

---

[5] We consider the cross-appeal first because if the developers' contentions are correct, the trial court properly dismissed the Association's 2012 petition, which would moot all issues in Case No. A14A0138.

[6] Subsection (c) was added in 1990. See Ga. L. 1990, p. 876, § 1 (effective April 4, 1990). The developers' citations to cases decided before 1990 are thus inapposite. See *Warehouseboy Trading v. Gew Fitness, LLC*, 316 Ga. App. 242, 243 n. 3 (729 SE2d 449) (2012) (noting inapplicability of cases decided before 1990 concerning effect of dismissals for lack of subject matter jurisdiction on renewal actions).

(Emphasis supplied.) With the addition of subsection (c) of OCGA § 9-2-61 in 1990, the legislature made clear that even when a plaintiff's original action suffered from a defect of subject-matter jurisdiction, such as a lack of standing,[7] it was renewable as long as the plaintiff voluntarily dismissed the action without prejudice. As our Supreme Court has noted,

> the renewal statute is remedial in nature; it is construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits. The privilege of dismissal and renewal does not apply to cases decided on their merits or to void cases, but does allow renewal if the previous action was merely voidable. The original suit is *void if service was never perfected*, since the filing of a complaint without perfecting service does not constitute a pending suit. A suit is also *void and incapable of renewal under OCGA § 9-2-61 (a) if there has been a judicial determination that dismissal is authorized.* However, *unless and until the trial court enters an order dismissing a valid action, it is merely voidable and not void*.

*Hobbs v. Arthur*, 264 Ga. 359, 360 (444 SE2d 322) (1994) (citations and punctuation omitted; emphasis supplied).

---

[7] See, e.g., *Blackmon v. Tenet Healthsystem Spalding*, 284 Ga. 369, 371 (667 SE2d 348) (2008) ("The constitutional and procedural concept of 'standing' falls under the broad rubric of 'jurisdiction' in the general sense, and in any event, a plaintiff with standing is a prerequisite for the existence of subject matter jurisdiction.") (footnote omitted).

9

Although the developers cite in *Mikell v. Certain Underwriters at Lloyds, London*, 288 Ga. App. 430 (654 SE2d 227) (2007), for the proposition that the Association's 2012 petition was void, that decision is distinguishable: the *Mikell* plaintiffs' original action was dismissed for lack of standing by the trial court, rather than by plaintiffs themselves, with the result that plaintiffs' original suit was void rather than voidable. Id. at 431. Here, although the developers moved to dismiss the Association's original petition for lack of standing, that petition never became the subject of "a judicial dismissal based on a nonamendable defect." Id. It follows that the Association was free to renew its action within six months of its own voluntary dismissal of its original petition. The trial court did not err when it concluded that the Association's 2012 petition was a valid renewal of its 2011 petition.

Case No. A14A0138

3. The Association argues that the trial court erred when it dismissed the petition for lack of standing because the developers failed to raise the matter of standing before the Planning Commission and therefore waived it. We agree.

In 1977, the Supreme Court of Georgia adopted what it called a "substantial interest - aggrieved citizen" test for standing in cases involving zoning decisions by either a "city or county governing authority" or "a zoning board of adjustment." *Brock*

10

*v. Hall County*, 239 Ga. 160, 161 (236 SE2d 90) (1977). Under this Court's decision in *Victoria Corp. v. Atlanta Merchandise Mart*, 101 Ga. App. 163 (2) (112 SE2d 793) (1960), which our Supreme Court cited in *Brock*, a person has a "substantial interest" in a zoning board's decision when he has suffered "some special damages as a result" of a zoning board's decision "which is not common to other property owners similarly situated," thus having an interest "more than merely that of a taxpayer of the municipality seeking to have a strict enforcement of zoning regulations for the benefit of the general welfare of the community or general enhancement of property values." Id. at 163-164 (2). Consistent with the *Brock* "substantial interest - aggrieved citizen" test, DeKalb County Ordinance § 14-1, which concerns land development (including subdivisions), defines an "aggrieved person" as either "a person whose property is the subject of the action appealed from" or a person "who has a substantial interest in the action appealed from that is in danger of suffering special damage or injury not common to all property owners similarly situated." Ordinance § 14-95 (e) authorizes a person thus "aggrieved by a denial or approval of a sketch plat" to appeal by certiorari petition to DeKalb County Superior Court.[8]

---

[8] Ordinance § 14-95 (e) provides in full: "Any person or entity (i.e., an owner, applicant, adjoining neighbor or a neighbor whose property line is within one thousand five hundred (1,500) feet of the nearest property line of the proposed subdivision) aggrieved by a denial or approval of a sketch plat, may appeal by filing a petition for writ of certiorari to the superior court of DeKalb County."

11

Although the developers urge us to move directly into consideration of the Association and certain of its members' standing under the "substantial interest - aggrieved citizen" test just described, we must first consider whether the developers have waived the issue of the Association's standing by not raising it before the Planning Commission. "As a general rule, standing must be determined at the time at which the plaintiff's complaint is filed in order to place an actual case or controversy within the purview of the court." *Perdue v. Lake*, 282 Ga. 348 (1) (647 SE2d 6) (2007). As we explained in *RCG Properties v. City of Atlanta Bd. of Zoning Adjustment*, 260 Ga. App. 355 (579 SE2d 782) (2003), however, when a party seeks an appeal by certiorari from the decision of an administrative body to the superior court, the matter of standing can be waived if not raised before the administrative body. Id. at 362 (1). As in *RCG*, then, we are required to decide the "threshold issue" of whether the Association's certiorari action "constitute[s] an appeal of a 'zoning decision'" as defined in the Zoning Procedures Law, OCGA § 36-66-1 et seq. *RCG*, 260 Ga. App. at 360-361 (1). If the Association's certiorari action does not amount to an appeal of such a "zoning decision," then the matter of standing may be waived if not raised before the administrative body. Id. at 362 (1).

12

As we explained in *RCG*, "[Z]oning power, vested in the county governing authority, is legislative," and thus "presumptively valid and reviewed with great deference." 260 Ga. App. at 361 (1). "Notwithstanding this deference, appeals from rezoning decisions are conducted de novo, and new evidence, including expert testimony, may be introduced." Id., citing *Dougherty County v. Webb*, 256 Ga. 474, 477-478, n. 3 (350 SE2d 457) (1986). Further, "[b]ecause new evidence can be presented, the question of standing [in such zoning cases] can be raised and determined by the trial court." *RCG*, 260 Ga. App. at 361 (1), citing *Moore v. Maloney*, 253 Ga. 504, 506 (1) (321 SE2d 335) (1984). "On the other hand, the grant or denial of a variance or a permit is generally considered an administrative or a quasi-judicial action." Id., citing *Jackson v. Spalding County*, 265 Ga. 792, 794 (2), (462 SE2d 361) (1995). "This is so because the board's discretion is tightly controlled by the ordinance." *RCG*, 260 Ga. App. at 361 (1).

As we emphasized in *RCG*, the distinction between an appeal from an administrative body's legislative action and one from a quasi-judicial action of the same body is critical to any waiver analysis because "[t]he standard of appellate review is very different in each type of case." 260 Ga. App. at 361 (1). Whereas a petitioner seeking review of a local government's legislative decision may introduce

13

new evidence in the superior court, a petitioner seeking review of the same government's quasi-judicial decision is "bound by the facts presented to the local governing body" such that "neither the aggrieved person nor the board can offer additional or new evidence to the superior court reviewing the board's decision." *RCG*, 260 Ga. App. at 362 (1) (citations and punctuation omitted). If approval of the sketch plat was a "zoning decision" as defined by the Zoning Procedures Law, the Planning Commission was acting in a legislative capacity when it approved the developers' application, with the result that the developers may challenge the Association's standing for the first time in the superior court. *RCG*, 260 Ga. App. at 361-362 (1). If the Planning Commission's action was an exercise of its "quasi-judicial" capacities, the developers may not challenge the Association's standing in the superior court if they did not do so before the Commission. Id.[9]

With this rubric in mind, we turn to OCGA § 36-66-3, which defines a "zoning decision" as "final legislative action by a local government" resulting in:

(A) The adoption of a zoning ordinance;

---

[9]Although the developers assert that the absence of any standing requirement from the code under consideration in *RCG* distinguishes that case from the one before us, this was an alternative rather than primary ground of our holding. See 260 Ga. App. at 362 (1). The issue before us is not the content of the standing law, but whether that issue may be waived by failure to raise it before an administrative body.

14

(B) The adoption of an amendment to a zoning ordinance which changes the text of the zoning ordinance;

(C) The adoption of an amendment to a zoning ordinance which rezones property from one zoning classification to another;

(D) The adoption of an amendment to a zoning ordinance by a municipal local government which zones property to be annexed into the municipality; or

(E) The grant of a permit relating to a special use of property.

OCGA § 36-66-3 (4). This case does not involve any adoption of or amendment to a zoning ordinance, with the result that subsections (A) through (D) cannot apply. The only subsection arguably applicable to the approval of the sketch plat at issue here, which would transform three residential lots into seven of the same, is that the approval amounts to "[t]he grant of a permit relating to a special use of property" under subsection (E), which was added to the statute in 1998.[10]

As the Supreme Court of Georgia held before the adoption of subsection (E), however, a "special use" permit "authorize[s] a type of land use potentially incompatible with uses allowed in the particular zoning district, with issuance of the permit predicated upon compliance with conditions set out in the ordinance, or in the

_____

[10] See 1998 Ga. L. p. 1391, § 1; compare 1996 Ga. L. p. 1009, § 1 (adopting subsections (A) through (D) only).

15

discretion of the local zoning authority." *Fulton County v. Bartenfield*, 257 Ga. 766, 770 (2) (c) (363 SE2d 555) (1988), citing *Webb*, 256 Ga. at 475-477. The application before this superior court involved only the redrawing of three residential lots into seven residential lots. As such, it was not a "special use" application as defined by OCGA § 36-66-3 (4) (E) because it did not involve a change from one "type of land use" to a different use "potentially incompatible with uses allowed in the particular zoning district." *Bartenfield*, 257 Ga. at 770 (2) (c). Rather, the Planning Commission's approval of the developer's sketch plat was a simple "grant or denial of a variance or a permit," and was thus an exercise not of the Planning Commission's zoning or legislative powers, but "an administrative or a quasi-judicial action." *RCG*, 260 Ga. App. at 361 (1); see also *Bartenfield*, 257 Ga. at 770 (2) (c); *Jackson*, 265 Ga. at 793-794 (2) (a board of zoning appeals deciding whether to grant a variance was considering "whether the facts applying to a specific piece of property warrant relief from zoning under the standards set in the county ordinance," and was thus making a "quasi-judicial decision when it acted on the variance application") (footnotes omitted).

The developers seek to escape this conclusion by arguing that whereas the petitioners in *RCG* were appealing the decision of a board of zoning adjustment

16

affirming a city planning bureau's grant of a permit and variance, see 260 Ga. App. at 355-359, the plat approval before us would, in the absence of an appeal to the superior court, move from the Planning Commission to the DeKalb County chief executive.[11] As the developers themselves conceded below, however, the proceedings before the Planning Commission concerned a "permitting decision" as to whether the developers' plans "either meet or don't meet the objective criteria" set out in the county ordinance concerning subdivision sketch plats. As such, the decision to approve the sketch plat at issue here was a "quasi-judicial" decision whether or not to approve a plat subdividing three lots of vacant land already zoned as residential into seven lots zoned in the same way. See *Jackson*, 265 Ga. at 794 (2) (an administrative body deciding a request for a variance was "making a quasi-judicial decision" as to whether a specific piece of property warranted relief from the standards set out in a county's zoning ordinance).

When a superior court reviews a quasi-judicial decision by an administrative body, "the superior court is not the proper forum in which to present evidence and conduct discovery, since the facts of the action are determined at the hearing[,]" with

---

[11] See DeKalb County Ordinance § 14-124 (concerning approval of a final plat by the county's chief executive officer).

17

the result that "no new evidence will be permitted at this stage." *RCG*, 260 Ga. App.

at 361-362 (1) (citations omitted). Because the Planning Commission was making a

quasi-judicial decision when it approved the sketch plat at issue here, the superior

court was bound by the record as developed before the commission, and could not

consider the issue of the Association's standing when that issue had not been raised

before the Planning Commission. Id. at 362-363 (1). The trial court erred when it

reached the contrary conclusion and granted the developers' motion to dismiss for

lack of standing. Id. (board of zoning adjustment was barred from raising issue of

RCG's standing to contest its decision in the superior court when that issue had not

been raised in proceedings before the board).[12] We therefore reverse the dismissal of

---

[12] Our Supreme Court's decision in *Massey v. Butts County*, 281 Ga. 244 (637 SE2d 385) (2006), does not require a different result. *Massey* involved a petition for a permanent injunction requiring the removal of a barn constructed pursuant to a county's issuance of a building permit, which the petitioner argued was null and void. Id. at 244. The Supreme Court characterized the county's decision to issue the permit as a "zoning determination," applied the "substantial interest - aggrieved citizen" test to the appeal to the superior court, and affirmed that court's dismissal of the petition for lack of standing. Id. at 247. As *Massey* explicitly concerns a "zoning" or "legislative" decision rather than a "quasi-judicial" decision and contains no discussion of either the Zoning Procedures Law or waiver, *RCG* therefore remains good authority for the proposition that, after the passage of the Zoning Procedures Law, a party may waive the issue of standing by not raising it before a local authority acting in a quasi-judicial capacity. "[Q]uestions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." *Palmer v. State*, 282 Ga. 466, 468 (651 SE2d 86) (2007).

the Association's petition and remand for further proceedings consistent with this opinion, excluding the issue of the Association's or its members' standing. Id. at 363 (1) (on remand, a superior court could not consider petitioner's standing, but should consider whether the BZA's decision to grant petitioner a variance was "correct as a matter of law" and whether the record contained evidence supporting that decision such that the BZA did not "abuse[] its discretion" or act "in an arbitrary or capricious manner"); see also *Martin Marietta Corp. v. Macon-Bibb County Planning & Zoning Comm.*, 235 Ga. 689, 692-693 (221 SE2d 401) (1975) (petition for certiorari to superior court from decision of county planning commission was limited to the question whether a rezoning decision was "justified" by the evidence presented to it and was "not arbitrary, unreasonable, [or] confiscatory").

4. The Association also asserts that the trial court should not have granted the developers' motion to dismiss without first addressing the Association's exception and traverse to the developers' answer. Our reversal of the grant of the motion to dismiss moots this assertion, which awaits disposition on remand.

*Judgment affirmed in Case No. A14A0139. Judgment reversed and case remanded with direction in Case No. A14A0138. Barnes, P. J., and Boggs, J., concur.*

19