**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 5, 2020**

# In the Court of Appeals of Georgia

A19A2199. DAVIS et al. v. ROCKDALE ART FARM, INC. et al.

REESE, Judge.

The Rockdale County Board of Commissioners granted a special use permit application filed by Appellee Art Farm Properties, LLC. Two opponents of the application, T. Eleanor Davis and Donald F. Meyer ("the Appellants"), then filed a petition for a writ of certiorari in the Superior Court of Rockdale County. The superior court granted motions to dismiss the petition filed by Rockdale County and three members of the Board of Commissioners (collectively, "the County Appellees") and by Art Farm Properties.[1] We granted the Appellants' application for discretionary review. For the reasons set forth infra, we affirm the trial court's decision.

---

[1] The Appellants do not challenge, and we do not address, the portion of the superior court's order granting a motion to dismiss by Rockdale Art Farm, Inc., on the ground that it was not a proper party to the case.

According to the certiorari petition, Art Farm Properties is the owner of three parcels of land in Stockbridge (jointly referred to as "the Property"), zoned A-R (agricultural-residential) pursuant to the Rockdale County Uniform Development Ordinance ("Rockdale UDO").[2] The application sought authorization for a creative arts learning center, or "art farm," at which lodging would be offered for artists and art program attendees.

After public hearings, the Board approved the application subject to certain conditions. Specifically, the Board enacted Ordinance Number O-2018-13, "to authorize a special use permit for [the] recreational and vacation camp[;] to impose conditions upon said special use permit; to repeal conflicting ordinances; to set an [October 9, 2018] effective date[.]" The "Conditions of Zoning[,]" included, inter alia, restrictions on the time of day of outdoor activities, on the number of consecutive nights lodgers could stay, on parking and driving, and on the use of outdoor amplified noise.

---

[2] See Rockdale County, Ga., Code of Ordinances, subpt. B ("Rockdale UDO"), §§ 102-1 (title); 202-4 (division of county into districts); 206-2 (A-R agricultural-residential district).

In their petition for a writ of certiorari,[3] as amended on February 11, 2019, the Appellants alleged that the Property was approximately three-tenths of a mile from the Appellants' property. According to the petition, the approved use of the Property would cause the Appellants special damages, "including commercial activity noise due to outside speakers, commercial activity light pollution due to the lighting, and increased traffic." Further, the Appellants alleged that they would "suffer discomfort, loss of peace of mind, unhappiness and annoyance[,] and diminished property values[.]" Further, because the Appellants' property was "located at a higher elevation than [the Property, the Appellants would] be uniquely affected by commercial light pollution[.]"

The Appellees filed motions to dismiss the petition, arguing, inter alia, that the Appellants lacked standing to challenge the approval of the permit. The Appellants responded that, even if the Appellees had not waived their right to contest standing

---

[3] The petition also sought declaratory, mandamus, and injunctive relief, and included a request for attorney fees pursuant to OCGA § 13-6-11. The superior court found that mandamus and injunctive relief were not procedurally available remedies, that declaratory relief was not appropriate because the issues did not affect the Appellants' future plans, and that the attorney fees claim failed once the Appellants' other claims were dismissed. The Appellants do not challenge these findings on appeal.

by failing to raise the issue before the Board, the Appellants had presented evidence of damages that were not common to the general public.

The superior court granted the Appellees' motions to dismiss. The court rejected the Appellants' waiver argument:

> Requiring an applicant in the position of [the Appellees] to object at the application hearing based on standing to all who tried to speak in opposition to a special use permit application would be both useless under the Rockdale UDO, because the [B]oard is required to allow the opposition to speak, and would be premature because the applicant could not assess standing in advance of the opposition's presentation. The law does not require a useless act.

The superior court concluded that the Appellants had alleged only generalized impacts and had failed to claim any unique damage that would not equally affect all landowners in the vicinity of the Property. The court noted that it could only address the alleged procedural deficiencies in the permit approval if the Appellants had proper standing. Further, many of the Appellants' complaints, "such as wastewater, the height of the proposed buildings, the use of outdoor lighting and audio, and the number of visitors, [were] controlled by the County permitting process." This appeal followed.

4

To establish standing in a zoning case, a citizen must have a substantial interest, which must suffer substantial damage by reason of the contested zoning change. A trial court's decision with respect to standing will not be reversed absent clear error, although we review de novo any questions of law inherent in that decision.[4]

With these guiding principles in mind, we turn now to the Appellants' claims of error.

1. The Appellants argue that the trial court erred in dismissing their petition because the Appellees had waived the issue of standing by failing to raise it in the administrative proceedings. Specifically, the Appellants contend that the grant was a quasi-judicial, rather, than a legislative decision and was "tightly controlled by eight objective criteria listed in the [UDO]." Thus, the trial court was bound by the facts presented in the administrative record. Although the record on appeal does not include transcripts of the public hearings, the Appellees do not contend that they did, in fact, raise the issue of standing at the administrative level.

We have held that "when a party seeks an appeal by certiorari from the decision of an administrative body to the superior court, the matter of standing can be waived if not raised before the administrative body[,]" if that body was acting in a quasi-

---

[4] *Harden v. Banks County*, 294 Ga. App. 327, 328 (1) (670 SE2d 133) (2008).

judicial capacity.[5] If, on the other hand, the certiorari action constitutes an appeal of a legislative or "zoning decision," as defined in the Zoning Procedures Law,[6] such appeal is "conducted de novo, and new evidence, including expert testimony, may be introduced."[7]

> "Zoning decision" means final legislative action by a local government which results in:
> (A) The adoption of a zoning ordinance;
> (B) The adoption of an amendment to a zoning ordinance which changes the text of the zoning ordinance;
> (C) The adoption of an amendment to a zoning ordinance which rezones property from one zoning classification to another;
> (D) The adoption of an amendment to a zoning ordinance by a municipal local government which zones property to be annexed into the municipality; or
> (E) The grant of a permit relating to a special use of property.[8]

---

[5] *Druid Hills Civic Assn. v. Buckler*, 328 Ga. App. 485, 492 (3) (760 SE2d 194) (2014).

[6] OCGA § 36-66-1 et seq.

[7] *Buckler*, 328 Ga. App. at 492 (3) (citation and punctuation omitted).

[8] OCGA § 36-66-3 (4).

"Zoning power, vested in the county governing authority, is legislative."[9] The purpose of a special use permit is "to authorize a type of land use potentially incompatible with uses allowed in the particular zoning district, with issuance of the permit predicated upon compliance with conditions set out in the ordinance, or in the discretion of the local zoning authority."[10]

Regarding special use permits, the Rockdale UDO provides that the Board's decision on each application:

> shall be based on a discretionary determination as to whether or not the applicant has met the [eight] criteria contained in [Rockdale UDO § 238-6 (m)], the use standards contained in [Rockdale UDO § 218-1 et seq.] where applicable to the use proposed, the consistency of the application with the comprehensive plan, the requirements of the zoning district in which such use is proposed to be located, and any additional conditions deemed necessary to ensure the compatibility of the conditional use with the surrounding properties.[11]

---

[9] *RCG Properties v. City of Atlanta Bd. of Zoning Adjustment*, 260 Ga. App. 355, 361 (1) (579 SE2d 782) (2003) (citation and punctuation omitted).

[10] *Fulton County v. Bartenfeld*, 257 Ga. 766, 770 (2) (c) (363 SE2d 555) (1988).

[11] Rockdale UDO § 238-6 (k) (2).

7

Although the Appellants argue that the Board's decision "was tightly controlled by eight objective criteria listed in the Rockdale UDO under Section 238-6 (m)[,]" as set forth above, the Rockdale UDO specifically directs the Board to use its discretion and to consider other factors, including "the consistency of the application with the comprehensive plan[.]"[12]

Based on the foregoing and our review of the facts alleged in the Appellants' petition, the approval of the application for the special use permit constituted a zoning decision or legislative action. The permit authorized a type of land use — a recreational and vacation camp, or art farm — that was potentially incompatible with the agricultural-residential uses allowed in the zoning district. Further, issuance of the permit was based on a discretionary determination by the Board as to whether the application satisfied certain criteria or conditions.[13] Thus, the Appellees were not

[12] Cf. *City of Cummings v. Flowers*, 300 Ga. 820, 824 (3) (797 SE2d 846) (2017) (holding that a variance decision was quasi-judicial where the board's discretion was "tightly controlled" by the Forsyth County ordinance).

[13] See Rockdale UDO § 238-6 (k) (2); see also *Manning v. A. A. B. Corp.*, 223 Ga. 111, 115 (1) (a) (153 SE2d 561) (1967) (holding that a county board of commissioners did not render a quasi-judicial decision in denying a conditional use permit for construction of a shopping center).

required to raise the issue of standing before the Board in order to raise the issue in superior court.[14]

Further, the trial court did not clearly err in finding that the Appellees raised standing at the first available opportunity. The Rockdale UDO sets forth procedural requirements "for any matter concerning the issuance of a special use permit or other matter on the agenda that requires a public hearing and a vote of the board of commissioners,"[15] including the following:

> The chair shall provide an opportunity for the applicant and any who support the applicant's petition to speak. The chair *shall* provide equal opportunity for those who wish to speak in opposition to the applicant's petition. The chair may limit the presentation of those for and against a petition to a reasonable length of time, but not less than ten minutes per side.[16]

Regarding the right to appeal, the Rockdale UDO provides:

> Any person, persons or entities jointly or severally aggrieved by any decision of the board of commissioners regarding a special use permit

---

[14] See *Buckler*, 328 Ga. App. at 492 (3); *RCG Properties*, 260 Ga. App. at 361 (1).

[15] Rockdale UDO § 238-4 (f) (2); see also Rockdale UDO § 238-6 (g) (requiring public hearings on applications for special use permits).

[16] Rockdale UDO § 238-4 (f) (2) (d) (emphasis supplied).

application may take an appeal to the superior court of the county. The appeal shall be limited to the proceedings and record of the board of commissioners. Any appeal must be filed within 30 days of the decision of the board of commissioners[.][17]

In fact, the Appellants complained in their petition that the Board violated this provision by not giving them "equal time" to that given to Art Farm Properties and other proponents. As the Appellants appear to recognize, "the standing of neighbors to enjoin rezoning granted a property owner and the standing of neighbors to be heard by a governing authority when considering a proposed zoning change are two separate and distinct things."[18] To hold otherwise, would, as the County Appellees argue, require an agency, "to include as a part of its preliminary announcements, prior to each and every meeting, that the specific agency objects to the standing of each and every applicant and application as to any determination that may or may not be made by the agency in order to preserve affirmative defense."

Having determined the Appellees did not waive their right to challenge the Appellants' standing, we turn now to that issue.

---

[17] Rockdale UDO, § 238-6 (s).

[18] *Powers Ferry Civic Assn. v. Life Ins. Co. of Ga.*, 250 Ga. 419, 421 (2) (297 SE2d 477) (1982) (citation and punctuation omitted).

2. In their second enumerated error, the Appellants contend that they "have shown sufficient evidence to establish standing[ ]" and that the Appellees' "agent admitted to the damages to [the] Appellants' Property in his testimony (unsworn)."

As noted above, the record on appeal does not contain transcripts of the public hearings. However, even considering the amended petition most favorably to the Appellants,[19] we conclude that the trial court did not clearly err in finding that they had failed to establish standing.[20]

Under the "substantial-interest-aggrieved citizen" test, "there are two steps to standing: First, a person claiming to be aggrieved must have a substantial interest in the zoning decision, and second, this interest must be in danger of suffering some special damage or injury not common to all property owners similarly situated."[21] "[B]oth prongs of the standing test must be satisfied."[22]

---

[19] See *Stendahl v. Cobb County*, 284 Ga. 525 (1) (668 SE2d 723) (2008).

[20] See *Harden*, 294 Ga. App. at 328 (1).

[21] *The Stuttering Foundation v. Glynn County*, 301 Ga. 492, 494 (2) (a) (801 SE2d 793) (2017) (citations and punctuation omitted).

[22] Id. at 503 (2) (b), n. 14.

11

Here, the Appellants only generally alleged that the art farm would create noise, light, and traffic, and that it would decrease property values, without alleging how these effects would harm them differently than other property owners in the area.[23] Although they contend that they would be uniquely affected by commercial light pollution because their property was located at a higher elevation than the Property, the Appellants have not shown that other nearby properties would not also be affected by the lighting.[24] Accordingly, we affirm the dismissal of their petition.

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[23] See *Lindsey Creek Area Civic Assn. v. Consolidated Govt. of Columbus*, 249 Ga. 488, 490-491 (292 SE2d 61) (1982).

[24] See *Miller v. Fulton County*, 258 Ga. 882, 884 (2) (375 SE2d 864) (1989).