**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 2, 2018**

# In the Court of Appeals of Georgia

A18A0934. YORK et al. v. ATHENS COLLEGE OF MINISTRY, INC. et al.

MILLER, Presiding Judge.

After Athens College of Ministry, Inc. ("ACM") sought to build a college campus in Oconee County (the "County"), Kevin York and Icy Forest, LLC objected to the issuance of a special use permit for the proposed development. The trial court granted ACM's and the County's motions to dismiss for lack of standing, and York and Icy Forest now appeal. The appellants argue that the trial court (1) erroneously concluded that the decision to issue the permit was a legislative action, and not a quasi-judicial one; and (2) erred in ruling that ACM and the County could therefore challenge their standing for the first time in the trial court.

We determine that the decision to issue the permit was quasi-judicial, and the appellees therefore waived their challenge to York's and Icy Forest's standing by not raising this issue before the Board. Thus, the trial court erred in granting ACM's and the County's motions to dismiss on the basis that the appellants lacked standing, and we reverse.

This Court reviews de novo a trial court's ruling on a motion to dismiss. *Carter v. Cornwell*, 338 Ga. App. 662 (791 SE2d 447) (2016). So viewed, the record shows that in late 2016, ACM sought by application a special use permit[1] to build a college campus on more than 100 acres of land (the "Property") owned by Green Hills Farms, LLC ("Green Hills").[2] The Property is located in an agricultural zoning district. York and Icy Forest, however, who are also property owners in the area, sent a letter to the Oconee County Board of Commissioners (the "Board"), objecting to the application.

Before a special use permit may be granted, "due consideration" is given to ten "objective criteria," as outlined in the Oconee County Development Code (the

---

[1] We note that a "special use permit" and a "special use approval" both refer to the same zoning technique. *City of Roswell v. Fellowship Christian School*, 281 Ga. 767, 768 (1) (642 SE2d 824) (2007).

[2] Although the "zoning change application" identifies the applicant as Smith Planning Group, LLC, the parties do not dispute that the application was submitted for ACM's proposed development.

"ordinance"). The ordinance also mandates that the Board hold a public hearing. The County's planning department issued a report analyzing the application based on the criteria in the ordinance, and the County recommended that the application be approved, subject to certain conditions. After a public hearing, the Board granted the special use permit, subject to specific conditions. ACM and the County do not claim that the appellants' standing was challenged at the hearing or at any other time before the Board granted the permit.

York and Icy Forest then filed a petition for a writ of certiorari, and the Oconee County Superior Court granted the writ. In separate motions, both ACM and the County moved to dismiss the appellants' petition, arguing that they lacked the requisite standing to challenge the Board's decision. ACM contended that the appellants did not show that they would be damaged in a way that was uncommon to similarly situated property owners, and the County likewise argued that the appellants were not aggrieved citizens. The County also argued that it could challenge the appellants' standing before the trial court because the Board's decision to issue the permit was legislative. York and Icy Forest responded that the Board's decision was quasi-judicial, and the trial court's review was therefore limited to the arguments

3

raised before the Board. Thus, York and Icy Forest contended that because the appellees had not raised the issue of standing before the Board, it was waived.

Following a hearing, the trial court granted both motions to dismiss for lack of standing. The trial court determined that the application essentially sought a special use permit, which is governed by OCGA § 36-66-3 (4) (E)[3]; that the Board had acted in a legislative capacity when it granted the permit; and that the trial court could therefore review the issue of standing in the first instance. The trial court then ruled that York and Icy Forest lacked standing to challenge the Board's decision because they failed to show a special damage or injury. We granted the appellants' application for discretionary appeal, and this appeal followed.

In interrelated enumerations of error, York and Icy Forest contend that the decision to grant the permit was quasi-judicial and, as a result, the appellees had waived their challenge to standing by not raising this issue before the Board. Thus, the appellants argue that the trial court erred in granting ACM's and the County's motions to dismiss. We agree.

---

[3] Although the trial court recited the language of OCGA § 36-66-3 (4) (E), it appears to have mistakenly referred to the statute as "OCGA § 36-6-3 (4) (E)," which does not currently exist in the Georgia Code.

4

"The writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers . . . ." *City of Cumming v. Flowers*, 300 Ga. 820, 823 (3) (797 SE2d 846) (2017) (citing OCGA § 5-4-1 (a)). When a party seeks certiorari review in the trial court of a decision of an administrative body acting in a quasi-judicial capacity, the trial court is bound by the facts and evidence presented to the administrative body, and the issue of standing is waived if it was not raised before the administrative body. *Druid Hills Civic Assn. v. Buckler*, 328 Ga. App. 485, 492-493 (3) (760 SE2d 194) (2014), disapproved in part on other grounds by *Hourin v. State*, 301 Ga. 835, 836 (1) (804 SE2d 388) (2017). Conversely, a petitioner seeking review of a local government's *legislative* decision may introduce new evidence in the trial court, and the question of standing can also be raised and determined. See id.[4]

Thus, the operative question in this case is whether the Board's decision was quasi-judicial or legislative. "The test for determining whether official action is [quasi-judicial] or legislative focuses on the function performed by the

---

[4] We also note that if an inferior judicatory or body has rendered a decision in the exercise of its legislative powers, certiorari is not an appropriate remedy to review or obtain relief from the judgment. *Flowers*, supra, 300 Ga. at 823 (3).

5

decisionmaker." (Citation omitted.) *Diversified Holdings v. City of Suwanee*, 302 Ga. 597, 601 (II) (807 SE2d 876) (2017).

> Generally, [a quasi-judicial] decision operates to address a specific dispute or determine rights and obligations of a particular party or parties. The resulting decision seeks to establish those rights and obligations or otherwise resolve the dispute, and is immediate in application. A legislative decision, on the other hand, is usually marked by a general inquiry, often not limited to the facts and circumstances of specific people or properties, which results in a rule of law or course of policy that will apply in the future.

(Citation omitted.) Id. at 601-602 (II).

Also, "adjudication is [generally] the decisionmaking process for applying preexisting standards to individual circumstances." (Citation omitted.) *State v. Intl. Keystone Knights of the Ku Klux Klan*, 299 Ga. 392, 401 (4) (a) (788 SE2d 455) (2016). It follows, then, that "[w]here . . . a special permit is sought under terms set out in the local ordinance, the local governing body acts in a quasi-judicial capacity to determine the facts and apply the law." (Citation and punctuation omitted.) *Bulloch County Bd. of Commrs. v. Williams*, 332 Ga. App. 815, 817 (773 SE2d 37) (2015). See also *Moon v. Cobb County*, 256 Ga. 539 (350 SE2d 461) (1986).

In this case, the ordinance directed that due consideration be given to ten objective "standards for special use consideration" before the grant of the permit. Correspondingly, the application for the permit contained a "zoning impact analysis," addressing each of these criteria in relation to ACM's proposed special use of the Property. Pursuant to the ordinance, in order for the Board to decide on the application, the County's planning department had to review the application and make a recommendation to the Board. Thus, the planning department analyzed the application against the ten criteria in the ordinance, and the Board then held a hearing before granting the permit.

Therefore, the process used for the Board's decision involved "determin[ing] the facts and apply[ing] the ordinance's legal standards to them, which is a decision-making process akin to a judicial act." (Citations and punctuation omitted.) *Flowers*, supra, 300 Ga. at 824 (3).[5] *Bentley v. Chastain*, 242 Ga. 348, 349 (1) n.4

---

[5] Although *Flowers* concerned a variance, and this case involves a special use permit, the Supreme Court in *Flowers* noted that they are similar. *Flowers*, supra, 300 Ga. at 827 (5) (b) n.5. The Supreme Court then stated, "it is not clear that conditional and special use permit cases are meaningfully different from variance cases in [the local-ordinance requirement] context, at least in cases where the zoning board must apply a set of factors set out in the zoning ordinance to the specific facts of the conditional or special use request." Id. By the same token, since the decision-making process in *Flowers* is similar to the process used here, we find that *Flowers* is applicable.

(249 SE2d 38) (1978) (same); *Rogers v. Mayor & Aldermen of the City of Atlanta*, 110 Ga. App. 114, 121-122 (4) (137 SE2d 668) (1964) ("A governmental agency entrusted with the licensing power functions as a legislature when it prescribes these standards, but the same agency acts as a judicial body when it makes a determination that a specific applicant has or has not satisfied them."). The Board's decision was also "immediate in application, specific in application, and involved an assessment of facts about the parties and their activities, businesses, and properties." (Citation and punctuation omitted.) *Flowers*, supra, 300 Ga. at 824 (3). Thus, the determination to grant the special use permit was quasi-judicial.

The trial court, in deciding that the Board's decision was legislative, found that OCGA § 36-66-3 (4) governs this dispute. This statute provides,

> *"Zoning decision" means final legislative action* by a local government which results in: (A) The adoption of a zoning ordinance; (B) The adoption of an amendment to a zoning ordinance which changes the text of the zoning ordinance; (C) The adoption of an amendment to a zoning ordinance which rezones property from one zoning classification to another; (D) The adoption of an amendment to a zoning ordinance by a municipal local government which zones property to be annexed into the municipality; or *(E) The grant of a permit relating to a special use of property.*

8

(Emphases supplied.) OCGA § 36-66-3 (4). Thus, the trial court appears to have concluded that because the local government's action in this case resulted in the "grant of a permit relating to a special use of property" it was necessarily a "legislative action."

But we do not interpret the statute in that manner. OCGA § 36-66-3 (4) defines a *"zoning decision,"*[6] not a "special use permit" or "special use approval" decision. In other words, the statute does not, on its face, make a local government's issuance of any and all "permit[s] relating to a special use of property" "legislative action[s]," regardless of the process that was used to make any such decision.[7] See *Deal v.*

---

[6] Even if the grant of the special use permit would be labeled a "zoning change" under the ordinance, the ordinance's characterization of the decision is not determinative because "substance matters far more than form, and the courts need not capitulate to the label that a government body places on its action." (Citation and punctuation omitted.) *Keystone Knights*, supra, 299 Ga. at 402 (4) (a). Where, as here, the grant of the permit involved assessing whether the application met the criteria set out in the ordinance, the Board's action was quasi-judicial. *Rogers*, supra, 110 Ga. App. at 121-122 (4).

[7] Amicus argues that the bill preceding the 1998 enactment of the statute was proposed by a legislator who specifically sought to make the issuance of a special use permit a legislative decision. See Ga. L. 1998, p. 1391, § 1. However, we have found no such expressed purpose. As our Supreme Court has stated,

[w]hen judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws,

*Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) ("When we consider the meaning of a statute, we must presume that the General Assembly meant what it said and said what it meant.") (citation and punctuation omitted).

Again, in determining whether the decision was quasi-judicial or legislative, "the [C]ourt examines how the ordinance defines the parameters and requirements of the decision and the *process* the local entity uses to reach it." (Emphasis supplied.) *Flowers*, supra, 300 Ga. at 831 (5) (d). Here, the ordinance states, "[a] Special Use otherwise permitted within a zoning district *shall* be considered to be compatible with other uses permitted in the district, *provided that*" the Board gives due consideration to the criteria explicated in the ordinance and conducts a public hearing in accordance with ordinance provisions. And the County's staff report specifically states that "[t]he

---

but rather the unexpressed "spirit" or "reason" of the legislation, and the need to make sure the law does not cause unreasonable consequences, we venture into dangerously undemocratic, unfair, and impractical territory.

(Citations omitted.) *Gibson v. Gibson*, 301 Ga. 622, 632 (3) (c) (801 SE2d 40) (2017). Thus, "our concern is with the actual text of statutes, not the subjective statements of individual legislators expressing their personal intent in voting for or against a bill." *Malphurs v. State*, 336 Ga. App. 867, 871 (785 SE2d 414) (2016). See also *Olevik v. State*, 302 Ga. 228, 237 (2) (c) (i) (806 SE2d 505) (2017).

10

analysis of [ACM's] application [was] made upon the standards for special use consideration." See, e.g., *Flowers*, supra, 300 Ga. at 824 (3) (board's decision was quasi-judicial partly because it was "tightly controlled by the ordinance."). Although the grant of the permit ultimately authorized a change in use of land, it remains that the "permit [was] sought under terms set out in the ordinance," and the Board therefore acted in a "quasi-judicial capacity to determine the facts and apply the law" as relevant to ACM's application for building its college. *Fulton County. v. Bartenfeld*, 257 Ga. 766, 770 (2) (c) (363 SE2d 555) (1988). Compare *Keystone Knights*, supra, 299 Ga. at 401 (4) (a) (administrative determinations "of a legislative nature" "are often marked by a general factual inquiry that is not specific to the unique character, activities or circumstances of any particular person.").

When viewed in light of our decades-long case law explicitly addressing the difference between quasi-judicial and legislative decisions,[8] the decision which the

---

[8] We also note that OCGA § 36-66-3 does not assign any special definition to the phrase "final legislative action." Therefore, we will not depart from well-established case law, as well as binding Supreme Court of Georgia precedent, regarding how we distinguish between legislative and quasi-judicial decisions. See *Summerlin v. Ga. Pines Community Svcs. Bd.*, 286 Ga. 593, 594-595 (2) (690 SE2d 401) (2010) ("The General Assembly is presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it," and thus, "[t]he meaning and effect of a statute must always be determined with reference to and consideration of . . . decisions of the courts.") (citations omitted).

11

appellants are specifically challenging here is a *quasi-judicial* or *adjudicative* "action by a local government which results in . . . the grant of a permit relating to a special use of property." OCGA § 36-66-3 (4) (E). The character of the local government's action in this case, and the decision-making process involved, dictate that the grant of the special use permit does not fall under the statutory definition of "zoning decision." Thus, OCGA § 36-66-3 (4) (E) does not apply or compel the conclusion that the Board's decision was legislative.[9]

For the preceding reasons, we conclude that the decision to grant the special use permit in this case was quasi-judicial, and the appellees therefore waived their challenge to York's and Icy Forest's standing by failing to raise this issue before the Board. *RCG Properties, LLC v. City of Atlanta Bd. of Zoning Adjustment*, 260 Ga. App. 355, 362 (1) (579 SE2d 782) (2003) (Board's decision was quasi-judicial, and issue of standing was waived because it was not raised before the Board). Thus, the

[9] This Court's opinion in *Buckler*, supra, does not require a different result. In that case, we stated that the decision was not a zoning decision as defined by OCGA § 36-66-3 (4) (E), partly because the case did not involve permitting the use of land for a purpose that was potentially incompatible with that particular zoning district. *Buckler*, supra, 328 Ga. App. at 493-494 (3). Arguably implicit in this determination is its corollary: that a decision granting a request for a special use permit is a zoning decision, and, thus, a legislative action. But *Buckler* neither held nor implied that *all* special use permit decisions are legislative, and we will not read it as such.

trial court erred in granting ACM's and the County's motions to dismiss for lack of standing.

*Judgment reversed. Brown J., concurs. Goss, J., dissents.*

**\* THIS OPINION IS PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**

A18A0934. YORK et al. v. ATHENS COLLEGE OF MINISTRY,

INC. et al.

Goss, Judge, dissenting.

As the majority notes, a court considering whether standing can be raised for the first time in a superior court on an appeal from a decision of a zoning board must determine whether the decision taken by the board was quasi-legislative or quasi-judicial in nature. *Druid Hills Civic Assn. v. Buckler*, 328 Ga. App. 485, 492-493 (3) (760 SE2d 194) (2014). Unlike the zoning decision in *Buckler*, however, which involved a special use permit authorizing the transformation of "three residential lots into seven of the same" by redrawing lot lines, id. at 493 (3), the decision at issue in this appeal involves a *change in use* from a former golf course to a college campus – a change "potentially incompatible with uses allowed in the particular zoning

district." (Citation and punctuation omitted). Id. at 494 (3). Because the uses allowed in the district before us are agricultural, and because a special use permit is therefore required to operate a private school or university there, this case seems more analogous to cases including *Fulton County v. Bartenfeld*, 257 Ga. 766, 770 (2) (c) (363 SE2d 555) (1988), which we discussed and distinguished in *Buckler*.

The applicants in *Bartenfeld* sought a special use permit in order to operate a landfill on a property zoned, like the property at issue here, as agricultural. 257 Ga. at 767. In the course of affirming the superior court's issuance of a writ of mandamus ordering the county commission to approve the permit, our Supreme Court noted that the purpose of a special-use permit "is *to authorize a type of land use potentially incompatible with uses allowed in the particular zoning district*, with issuance of the permit predicated upon compliance with conditions set out in the ordinance, or in the discretion of the local zoning authority." (Emphasis supplied.) Id. at 770 (2) (c). This is consistent with OCGA § 36-66-3 (4) (E), adopted in 1998, which included "[t]he grant of a permit relating to a special use of property" as among the category of "zoning decision[s]" involving "final legislative action by a local government." Compare *City of Cumming v. Flowers*, 300 Ga. 820, 824 (3) (797 SE2d 846) (2017) (because a board of zoning appeals's discretion as to granting a variance was "tightly

2

controlled" by the relevant ordinance, and because its decision "involved an assessment of facts about the parties and their activities, businesses, and properties," it was quasi-judicial in nature).

The ordinance at issue here refers to a special use permit as a "zoning change," under which an application is submitted to the planning department and final approval granted or denied by the Board of Commissioners, whereas variances are addressed in a different portion of the ordinance and may require approval by the planning department alone. As the trial court noted in its order, although the Board of Commissioners was bound to consider the ten factors laid out in the ordinance, it retained the discretion to grant or to deny the special use permit even after considering all those factors, which supports the conclusion that the action taken was quasi-legislative rather than quasi-judicial. See *Martin Marietta Corp. v. Macon–Bibb County Planning & Zoning Comm.*, 235 Ga. 689, 692-693 (221 SE2d 401) (1975) (petition for certiorari to superior court from decision of county planning commission was limited to the question whether a rezoning decision was "justified" by the evidence presented to it and was "not arbitrary, unreasonable, [or] confiscatory").

When these applicants sought a special use permit, they were asking for the relevant authorities to grant them a permit involving "a type of land use potentially incompatible with uses allowed" in the remainder of this district. *Bartenfeld*, 257 Ga. at 770 (2) (c). Because action on this special use permit was quasi-legislative, the College and the County were authorized to raise the question of the applicants' standing for the first time on appeal from the grant of the special use permit in the superior court. See *Buckler*, 328 Ga. App. at 492-493 (3).[1] I therefore dissent.

---

[1] Our decision in *Bulloch Cty. Bd. of Commnrs. v. Williams*, 332 Ga. App. 815 (773 SE2d 37) (2015), did not mention or apply OCGA § 36-66-3 (4) (E), and is thus not binding on the question before us. See *Buckler*, 328 Ga. App. at 495 (3) n. 12 (in the absence of any "discussion of either the Zoning Procedures Law or waiver," a decision of the Georgia Supreme Court was not relevant authority on the question of standing).

4