**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

_DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES._

**March 11, 2021**

# In the Court of Appeals of Georgia

A20A1810, A20A1811, A20A1812, A20A1813. FORSYTH COUNTY GEORGIA et al. v. MOMMIES PROPERTIES LLC (four cases).

GOBEIL, Judge.

This case involves Mommies Properties, LLC's ("Petitioner")[1] four appeals to the Forsyth County Zoning Board of Appeals ("ZBA"): an appeal of a stop work order issued for failing to get a land disturbance permit for stockpiling dirt on its property (A20A1810); an appeal of a decision requiring an erosion control plan for grassing the property (A20A1811); an appeal of a second stop work order issued for failing to comply with the Metropolitan River Protection Act, OCGA § 12-5-440 et

---

[1] Vinay Bose is the owner and principal of Mommies Properties. For ease of reference and for the sake of clarity the term "Petitioner" refers to both Bose and Mommies Properties.

seq. ("MRPA") (A20A1812); and an appeal of a decision denying Petitioner a building permit to build a custodial residence on the property (A20A1813). The ZBA found against Petitioner and in favor of Forsyth County (the "County")[2] on all of the appeals. Petitioner appealed to the superior court by way of petitions for writ of certiorari. The superior court in turn reversed the ZBA's decisions, and denied the County's motions for reconsideration in each case. The County then filed four separate applications for discretionary appeal, which we granted. See Case Nos. A20D0334, A20D0335, A20D0336, and A20D0337 (granted March 25, 2020). The instant appeals followed. For the reasons that follow, we reverse in all four appeals.[3]

---

[2] The term the "County" refers to all of the named appellees collectively: Forsyth County, Thomas Brown in his capacity as Director of the Forsyth County Department of Planning and Community Development, and John Cunard in his capacity as Director of the Forsyth County Department of Engineering.

[3] In Case Nos. A20A1811, A20A1812, and A20A1813, Petitioner seeks to strike the County's brief. Specifically, Petitioner argues that the County's attempts to incorporate arguments from its briefs in the other appeals exceed the 8,400 word count contained in Court of Appeals Rule 24 (f) (1). Because Petitioner moved to strike the County's briefs within the body of its own briefs, its requests are denied. See Court of Appeals Rule 41 (b) ("All motions and responses to motions shall be filed as separate documents, and not as joint, compound, or alternative motions."); *Ridley v. Turner*, 335 Ga. App. 108, 113 (6) (778 SE2d 844) (2015) (refusing to consider a party's motion for frivolous-appeal penalty when same was not filed as a separate document). In any event, Court of Appeals Rule 23 (a) permits and encourages parties to adopt "all or a portion of another brief in the same case or from

The appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision below was supported by any evidence. On appeal to this [C]ourt, our duty is not to review whether the record supports the superior court's decision, but whether the record supports the initial decision of the local governing body or administrative agency. Neither the superior court nor this [C]ourt reweighs credibility determinations of the factfinder. In other words, because the factfinder in the initial proceedings is charged with weighing the evidence and judging the credibility of the witnesses, the superior court and this [C]ourt must view the evidence in the light most favorable to the factfinder's decision and must affirm the decision if there is any evidence to support it, even when the party challenging the factfinder's conclusions presented evidence during the initial proceedings that conflicted with those conclusions.

*City of Albany v. Pait*, 335 Ga. App. 215, 216 (1) (780 SE2d 103) (2015) (citation and punctuation omitted).

So viewed, the record shows that in 2005, Petitioner purchased an 18.41 acre tract in Forsyth County. At issue in these appeals is an approximately 3.92 acre portion of that tract (the "Property"), which is zoned Commercial Business District use under the Forsyth County Unified Development Code ("UDC") and is subject to

---

another case pending in this Court. The party adopting language from another brief shall specify precisely what portion of the other brief the party is adopting and list the case number, if different."

3

a zoning condition that limits its use to an equestrian center consisting of horse stables and paddocks. The Property is adjacent to the Chattahoochee River Club Subdivision, a residential development with approximately 600 homes (the "Subdivision"). The developer of the Subdivision built a large horse barn on the Property, and Petitioner has operated horse stables there since it purchased the Property in 2005. The Chattahoochee River Club Property Owners Association, Inc. (the "Association") is responsible for enforcement of covenants in the Subdivision.

On December 28, 2017, Code Enforcement Officer Doug Briggs went to the Property, at the request of County officials, to investigate reports of loads of dirt being delivered to the Property. Residents of the Subdivision and the Association had raised concerns to the County about activities on the Property including severe deforestation, construction noise, and other land disturbance nuisance. Upon arrival, Briggs observed four piles of dirt that had been brought onto the Property and was informed by a hauling contractor that more dirt was coming. Briggs testified that the hauling contractor told him the dirt came from Petitioner's "other projects" and was being "store[d]" on the Property. As Briggs was speaking with the contractor, three additional dump trucks filled with dirt pulled up at the Property. The contractor

agreed to temporarily cease delivery of the soil pending the County's investigation. Briggs noted that the Property lacked any permits for site development.

Briggs contacted Soil Erosion Inspector Shane Pruitt, who upon entry onto the Property shortly thereafter also noticed the dirt piles. Pruitt identified State Waters on the Property and estimated that the dirt was 150 feet away from the bank. Based on this information, Pruitt issued a stop work order on December 28, 2017, because Forsyth County's Soil Sedimentation and Erosion Control Ordinance ("Ordinance 73") requires a land disturbance permit to transport and stockpile dirt onto a site within 200 feet from State Waters absent any Best Management Practices ("BMP") in place.[4] Following the entry of the first stop work order, the only land-disturbing activity permitted on the Property would be instituting BMP. Petitioner countered that the four loads of dirt had been transported to the Property with the intent of top dressing a 0.3 acre portion of a horse paddock to grow grass and it did not need a permit for that purpose. Petitioner filed an appeal of the stop work order to the ZBA, and this claim forms the basis of the appeal in Case No. A20A1810.

---

[4] The Board of Commissioners of the County enacted Ordinance 73 pursuant to the Georgia Erosion and Sedimentation Control Act, OCGA § 12-7-1.

Around the same time that the dirt was being brought onto the Property, Petitioner represented that the electrical service utility for the Property had trenched a ditch across the margin of the riding ring to replace the power line to the stables building. The County issued a second stop work order on January 29, 2018, based on Petitioner's failure to comply with the MRPA to obtain a certificate or permit from the Georgia Mountains Regional Commission[5] regarding the dirt. Specifically, Thomas Brown in his capacity as Director of the County's Department of Planning and Community Development requested the second stop work order because he received information from Briggs that truckloads of dirt were being brought onto the Property without explanation for the use of the dirt and whether that use complied with the MRPA. Brown also explained that the County entered the second stop work order based on concerns that the engineering department could lift the first stop work order without confirmation as to whether Petitioner was in compliance with the MRPA. Petitioner insisted that it was not required to secure a MRPA permit to trench

[5] The Georgia Mountains Regional Commission provides technical assistance to thirteen counties, including Forsyth County, in the areas of planning, economic development, information services and technology, and workforce development. https://www.gmrc.ga.gov/aboutus (last visited Feb. 8, 2021).

a line for burying utility connections.[6] Petitioner filed another appeal with the ZBA to contest the second stop work order, and this claim forms the basis of the appeal in Case No. A20A1812.

Following the inspections of the Property, the County informed Petitioner that it needed an Erosion and Sedimentation and Pollution Control Plan, pursuant to Section V (D) (2) of Ordinance 73, in order to obtain a land disturbance permit for the dirt on the Property. Petitioner argued that no such plan was necessary because it planned to add top soil to an area less than one acre in size and more than 200 feet away from State Waters. Additionally, Petitioner alleged that it was being singled out by the County to meet certain permit requirements that were not imposed on other comparable entities.[7] Petitioner appealed the requirement of an erosion control plan to the ZBA, which is at issue in Case No. A20A1811.

Also during this time, Petitioner had applied for a building permit to build a custodial residence on the Property. The County denied the permit based on the

---

[6] Petitioner later removed the dirt from the Property despite the existence of the two stop work orders.

[7] Upon questioning by the County, Petitioner stated that other entities were not required to apply for a permit, but it could not provide any specific examples to support its allegation of unfair treatment.

pending stop work orders. Petitioner also appealed this decision to the ZBA, and this claim forms the basis of the appeal in Case No. A20A1813.

At the June 5, 2018 hearing before the ZBA, Petitioner appeared pro se,[8] and elected not to present any witnesses in support of its appeals. The County's witnesses, including Briggs, Pruitt, and Brown, testified as described above, and Petitioner was afforded an opportunity to cross-examine each of the witnesses. At the conclusion of the hearing, the ZBA ruled against Petitioner on all of its appeals. Petitioner appealed to the superior court via a consolidated petition for a writ of certiorari. The superior court dismissed this first petition without prejudice in response to the County's contentions that the appeals could not be consolidated in a single petition to the superior court. The County filed an application for discretionary appeal from the superior court's dismissal, essentially requesting clarification on the certiorari process and to prevent Petitioner from being able to re-file its petition. This Court denied the County's application. See Case No. A19D0498 (denied June 26, 2019).

---

[8] Bose spoke on behalf of Mommies Properties at the ZBA hearing.

On July 17, 2019, Petitioner renewed its appeal to the superior court by filing separate petitions for a writ of certiorari. After a two-day hearing,[9] the superior court reversed the ZBA as to the four certiorari cases.[10]

With respect to the first stop work order at issue in Case No. A20A1810, the superior court found that Ordinance 73 was ambiguous. Specifically, based on the language of the ordinance, the court held that it was unclear whether the addition of top soil and grass seed falls with the ambit of "land-disturbing activity." Construing the ambiguity in favor of Petitioner, the court found that the addition of top soil on the Property did not rise to the level of a land-disturbing activity requiring a permit. Alternatively, the court determined that, even if top soil application and seeding did qualify as land-disturbing activity, the exception contained in Ordinance 73 Section III (8) allows land-disturbing activities on property involving less than one acre of

---

[9] Petitioner was represented by counsel before the superior court.

[10] A fifth petition for writ of certiorari was filed regarding Petitioner's appeal from the imposition of an inspection requirement for the Property. The ZBA and the superior court found this issue moot because the County had abandoned its position. That appeal is not at issue here.

disturbed area without the need for a permit.[11] In rejecting the County's position that this exception does not apply because the Property is within 200 feet from the bank of State Waters, the court found that Pruitt's testimony regarding the distance to the water was based on speculation and thus it was not "competent evidence." The superior court therefore reversed the decision of the ZBA, which had upheld the first stop work order.

As to the second stop work order at issue in Case No. A20A1812, the superior court found that the MRPA does not require a landowner to obtain a permit to add topsoil and grass seed on a horse stable located within a MRPA zone. The court also held that the MRPA does not require a permit for the landowner to install an electrical utility line. In reversing the ZBA, the superior court again noted that there was no land-disturbing activity and that the only evidence to support the ZBA's conclusion that the dirt on the Property violated the MRPA came from Pruitt, whose distance testimony the court found to be speculative and not otherwise competent evidence.

---

[11] Ordinance 73, Sec. III (8) provides an exemption for "[a]ny project involving less than one acre of disturbed area; provided, however, that this exemption shall not apply to any land[-]disturbing activity within a larger common plan of development or sale with a planned disturbance of equal to or greater than one acre or within 200 feet of the bank of any State Waters[.]"

Next, with respect to the erosion control plan at issue in Case No. A20A1811, the superior court found in pertinent part that there was no need for such a plan in order to add top soil and grass seed onto the Property and reversed the ZBA's decision. And finally, as relevant to Case No. A20A1813, because the stop work orders and other requirements were invalid, the superior court found there was no legal ground for the County to deny Petitioner the building permit for a residence on the Property.

The County filed motions for reconsideration, which the superior court denied in a single order. The County then filed four applications for discretionary appeal, which we granted. The instant appeals followed.

1. In a claim common to all four appeals, the County argues that the superior court erred in failing to dismiss Petitioner's appeals because they were not brought within 30 days of the ZBA's June 5, 2018 decision. Specifically, the County contends that Petitioner could not rely on the renewal provisions of OCGA § 9-2-61 to re-file a timely action because the underlying action was not dismissed by the trial court for lack of subject matter jurisdiction. For the reasons that follow, we find that this argument lacks merit.

11

OCGA § 5-4-1 et seq. governs certiorari to the superior court. As relevant here, OCGA § 5-4-1 (a) provides that a "writ of certiorari shall lie for the correction of errors committed by any inferior judicatory or any person exercising judicial powers[.]" Furthermore, "[a]ll writs of certiorari shall be applied for within 30 days after the final determination of the case in which the error is alleged to have been committed. Applications made after 30 days are not timely and shall be dismissed by the court." OCGA § 5-4-6 (a). "The language of OCGA § 5-4-6 is certain, positive, and unequivocal." *Cobb County v. Herren*, 230 Ga. App. 482, 483 (496 SE2d 558) (1998) (citation and punctuation omitted). Our renewal statute, OCGA § 9-2-61, provides in relevant part:

> (a) When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later[.]
>
> ...
>
> (c) The provisions of subsection (a) of this Code section granting a privilege of renewal shall apply if an action is discontinued or dismissed

12

without prejudice for lack of subject matter jurisdiction in either a court of this state or a federal court in this state.

"It is settled that the renewal provisions of OCGA § 9-2-61 apply to certiorari cases brought pursuant to OCGA § 5-4-1 et seq." *Buckler v. DeKalb County*, 290 Ga. App. 190, 191 (1) (659 SE2d 398) (2008). As our Supreme Court has explained, "[t]he renewal statute is remedial in nature; it is construed liberally to allow renewal where a suit is disposed of on any ground not affecting its merits." *Hobbs v. Arthur*, 264 Ga. 359, 360 (444 SE2d 322) (1994).

Turning to the instant case, the ZBA entered its decision finding in favor of the County and against Petitioner in all of the appeals on June 5, 2018. On July 5, 2018, Petitioner obtained a "Sanction of Petition for Writ of Certiorari" to challenge the ZBA's decision, and filed a single petition in the superior court. That same day, Petitioner served the County with the petition, however, the writ was not filed until August 13, 2018.

On August 6, prior to the filing of the writ, the County moved to dismiss the petition on two grounds: (1) the writ was not timely filed or served as required by

13

OCGA § 5-4-6 (b),[12] and (2) a single petition cannot be used to appeal five separate Board decisions. Following a hearing, in an order dated May 3, 2019, the superior court denied the motion to dismiss on the first ground, but granted the motion on the second ground, concluding that it lacked jurisdiction to entertain a single petition seeking review of multiple lower adjudicatory decisions. The court granted the dismissal without prejudice. The County filed an application for discretionary review to appeal the superior court's denial of its motion to dismiss on the first ground, essentially requesting clarification on the certiorari process and to prevent Petitioner from being able to re-file its petition for a writ of certiorari. We denied the County's application. See Case No. A19D0498 (denied June 26, 2019).

On July 17, 2019, more than a year after the ZBA rendered its decision, but within six months of the dismissal of its first petition, Petitioner renewed its appeal to the superior court by filing separate petitions for a writ of certiorari. Petitioner explained that each petition for a writ of certiorari was being "filed as a renewal

---

[12] OCGA § 5-4-6 (b) provides that "[t]he certiorari petition and writ shall be filed in the clerk's office within a reasonable time after sanction by the superior court judge; and a copy shall be served on the respondent, within five days after such filing[.]" See *City of Sandy Springs Bd. of Appeals v. Traton Homes, LLC*, 341 Ga. App. 551, 554 (1) (801 SE2d 599) (2017).

action under the authority of OCGA § 9-11-41 (b) . . . within six (6) months of the dismissal without prejudice of the [original] action." The County argued that Petitioner's filing was untimely and it was not entitled to re-file its action under the renewal statute, OCGA § 9-2-61, because the superior court had not dismissed the original action for lack of subject matter jurisdiction.

In its original order reversing the ZBA, the superior court did not address whether Petitioner's action was properly filed as a renewal action. The County again raised the issue in its motion for reconsideration. In its order denying this motion, the superior court relied heavily on our holding in *Williams v. City of Peachtree City*, 192 Ga. App. 121 (385 SE2d 680) (1989), to reject the County's position. In *Williams*, the appellant petitioned the superior court for certiorari to review his convictions in municipal court for driving under the influence of alcohol and driving without insurance. Id. at 121. On motion by the city, the superior court dismissed the petition on the ground that it erroneously sought, via one application, review of two separate convictions. Id. Thereafter, the appellant filed a separate petition seeking review of his DUI conviction. Id. The court granted the city's motion to dismiss the petition on res judicata grounds, concluding that the previous dismissal operated as an adjudication on the merits. Id. On appeal, we reversed the dismissal, explaining:

15

The dismissal of the initial certiorari petition clearly was predicated on the court's lack of jurisdiction to entertain a single petition seeking review of two separate convictions. Pursuant to OCGA § 9-11-41 (b), a dismissal for lack of jurisdiction does not operate as an adjudication on the merits. It follows that the appellant was not barred by the doctrine of res judicata from filing a new petition to the superior court seeking review of his DUI conviction, with the result that the trial court erred in granting the city's motion to dismiss.

Id. (citations and punctuation omitted).

Here, as in *Williams*, the superior court dismissed the first action without prejudice for lack of jurisdiction based on Petitioner combining multiple appeals into one certiorari petition. 192 Ga. App. at 121. Because the judicial dismissal of the first petition was not "based on a nonamendable defect" and did not, per *Williams*, operate as an adjudication on the merits, Petitioner was able to renew its action within six months of the dismissal without prejudice, which it did. *Druid Hills Civic Assn. v. Buckler*, 328 Ga. App. 485, 490 (2) (760 SE2d 194) (2014), overruled on other grounds by *Hourin v. State*, 301 Ga. 835, 837 (1) n. 2 (804 SE2d 388) (2017) (citation and punctuation omitted). The trial court therefore did not err when it concluded that

16

the 2019 petition was a valid renewal of Petitioner's original action. Thus, this claim is without merit.[13]

2. In another claim it raises in all four appeals, the County asserts that the trial court erred in concluding that *all* hearsay evidence presented in front of the ZBA, without objection, was not competent evidence, and in finding that the evidence could not support the ZBA's decision. As explained below, we agree with the County's contention.

In its order reversing the ZBA, the superior court acknowledged that the scope of its review on certiorari from a decision of a lower tribunal is limited to alleged errors of law and a determination of whether the ZBA's decision was supported by "any evidence." The court then went on to state that "[t]he factual findings of the

---

[13] Petitioner contends that the County's instant appeals are barred by the law of the case doctrine based on our dismissal of the County's application in Case No. A19D0498. See *Massey v. Massey*, 294 Ga. 163, 165 (751 SE2d 330) (2013) (law of the case doctrine would apply when the party's first opportunity to appeal was through the discretionary application process rather than a notice of appeal). However, that application concerned a *different* issue, namely, the superior court's dismissal of Petitioner's combined writ of certiorari with respect to all of its appeals before the ZBA. As such, the law of the case doctrine has no bearing here. See *Houston County v. Harrell*, 287 Ga. 162, 163 (695 SE2d 29) (2010) ("[A] party is not entitled to a second appeal from a single order."); *Rice v. Lost Mountain Homeowners Assn., Inc.*, 288 Ga. App. 714, 714 (1) n. 4 (655 SE2d 214) (2007) (final order affirmed by appellate court constitutes law of the case).

[ZBA] are conclusive to the extent that they are supported by competent evidence," and "[c]ompetent evidence is that which is admissible." Finally, citing pre-2013 case law,[14] the superior court highlighted that "hearsay evidence, presented during an administrative proceeding, is not competent or appropriate evidence." The court went on to reverse the decisions of the ZBA, which had upheld the two stop work orders, as well as the need for an erosion control plan and a building permit for a custodial residence on the Property.

"When a party seeks certiorari review in the trial court of a decision of an administrative body acting in a quasi-judicial capacity, the trial court is bound by the facts and evidence presented to the administrative body." *York v. Athens College of Ministry*, 348 Ga. App. 58, 59-60 (821 SE2d 120) (2018) (physical precedent only). "In administrative hearings, the rules of evidence as applied in the trial of nonjury civil actions shall be followed, subject to special statutory rules or agency rules as authorized by law." OCGA § 24-1-2 (d) (4). Under Georgia's new Evidence Code,

---

[14] Specifically, the superior court relied on *Neal v. Augusta-Richmond County Pers. Bd.*, 304 Ga. App. 115 (695 SE2d 318) (2010), *Finch v. Caldwell*, 155 Ga. App. 813 (273 SE2d 216) (1980), and also cited to *HWA Properties Inc. v. Community & Southern Bank*, 320 Ga. App. 334 (739 SE2d 770) (2013).

18

> [h]earsay shall not be admissible except as provided by this article; provided, however, that if a party does not properly object to hearsay, the objection shall be deemed waived, and the hearsay evidence shall be legal evidence and admissible.

OCGA § 24-8-802. To the extent that the superior court's order can be read as ruling that *all* hearsay evidence, whether objected to or not, is inadmissible, this interpretation clearly conflicts with the new Evidence Code, which went into effect on January 1, 2013 and applies to the instant case.

The County also asserts that the superior court improperly "intervened" in the cases and "asserted its own objection to 'inadmissible matters.'" As previously noted, Petitioner elected to appear pro se before the ZBA. Prior to the start of the hearing, the ZBA approved a motion to appoint legal counsel to the ZBA to serve as a "hearing officer"[15] due to the quasi-judicial nature of the proceeding. The hearing officer then explained the rules and procedures and informed both parties that cross-examination of witnesses would be allowed, and the hearing officer would essentially serve as the evidence gatekeeper in that he would determine whether to admit or exclude tendered evidence and testimony. In its order denying the County's motion

---

[15] On June 5, 2018, the same day the ZBA heard Petitioner's appeals, the ZBA adopted new bylaws that contain revised procedures to govern *all* appeals going forward, including the appointment of a hearing officer.

for reconsideration, the superior court explained that while the rules of evidence were applied during the ZBA hearing, the court was troubled by their inconsistent application. Specifically, the court explained:

> during [Petitioner's] cross-examination of [ ] Pruitt, the hearing officer, not [the County's] counsel, interposed objections on behalf of [the County] with regard to relevancy when [Petitioner] inquired of Priutt's understanding of the uses for a flatbed truck.[16] Comparatively, with regard to the admission of hearsay, it appears that the hearing officer did not interject and prohibit the introduction of the hearsay and instead relied upon [Petitioner] to make the objection. . . . If the hearing officer was, in fact, the evidentiary gatekeeper, given his spontaneous objection to some of [Petitioner's] cross-examination questions, then the hearing officer should have denied the admission of the hearsay testimony.

Our review of the ZBA hearing indicates that Petitioner did not raise any objections with respect to the application of the evidentiary rules by the hearing officer or the procedures adopted at the hearing. We repeatedly have warned that

---

[16] On cross-examination, Petitioner questioned Pruitt regarding whether he was familiar with the uses of a flatbed truck. The hearing officer then asked Petitioner: "How is that relevant to the issue about whether there was a land disturbance violation and a stop work order was issued? I think everybody concedes that you were not issued a stop work order based on utilities or bobcats or anything like that so let's see if we can focus on just the issue about that." The recording of the ZBA hearing is devoid of any other instances where the hearing officer sua sponte interposed objections to Petitioner's presentation of its case.

"[o]ne who knowingly elects to represent himself assumes full responsibility for complying with the substantive and procedural requirements of the law." *Campbell v. McLarnon*, 265 Ga. App. 87, 90 (3) (593 SE2d 21) (2003) (citation and punctuation omitted). Although Petitioner indicated that it did not know the proceeding would be akin to a "trial" with certain rules and procedures for admitting evidence, it knowingly assumed the risk of appearing before the ZBA without counsel. See *Harvey v. Sullivan*, 272 Ga. 392, 393 (1) (529 SE2d 889) (2000) ("Pro se parties are generally bound by the same rules of practice and procedure as a lawyer.") (citation and punctuation omitted); *Turner v. Mize*, 280 Ga. App. 256, 259 (1) (633 SE2d 641) (2006) (a civil defendant's pro se status and ignorance of the consequences of the failure to timely respond to the plaintiff's requests for admissions provided no basis for relief from such consequences because a trial court cannot hold a pro se litigant to a different standard in complying with procedural rules than a litigant represented by counsel).

Importantly, Petitioner had an opportunity to cross-examine Briggs, as well as the County's other witnesses, but never raised any challenges, hearsay or otherwise, to what the hauling contractor told Briggs about the dirt on the Property. Additionally, while the hearing officer denied Petitioner's request to submit a packet

of evidence after both parties had rested in the appeal at issue in Case No. A20A1810, the hearing officer also allowed Petitioner to submit evidence over the County's objections in several instances. See *Holder v. J. F. Kearley, Inc.*, 153 Ga. App. 843, 845 (5) (267 SE2d 266) (1980) (Under Georgia law, whether to reopen the evidence after both parties have rested is a matter committed to the trial court's discretion.). In sum, the record does not support the superior court's conclusion that the ZBA held Petitioner "to a higher standard in the application of the rules of evidence during the ZBA administrative appeal hearing," and thus the court erred by unilaterally disregarding the unobjected-to hearsay evidence heard before the ZBA. We turn now to the County's enumerations of error in each appeal that address the consequences of this error.

*Case No. A20A1810*

3. In two interrelated enumerations of error, the County asserts that the superior court failed to follow the deferential "any evidence" standard in (a) finding that, based on testimony presented at the ZBA hearing, Petitioner intended to use the dirt for top soil and grass seed rather than for stockpiling;[17] and (b) in disregarding

17
The County repeats this claim in Case Nos. A20A1811, A20A1812, and A20A1813.

22

Pruitt's testimony regarding the estimated distance of the dirt on the Property from State Waters.[18]

As relevant here, Ordinance 73, Sec. V (B) (1) provides that "[n]o person shall conduct any land-disturbing activity within the jurisdictional boundaries of Forsyth County without first obtaining a permit from Forsyth County to perform such activity." The term "land-disturbing activity" is defined as:

> [a]ny activity which may result in soil erosion from water or wind and the movement of sediments into State Waters or onto lands within the State, including, but not limited to, clearing, dredging, grading, excavating, *transporting*, and filling of land but not including agricultural practices as described in Section III, (5) of this ordinance.

---

[18] The County repeats this claim in Case Nos. A20A1811, A20A1812, and A20A1813.

Ordinance 73, Sec. II (23) (emphasis supplied).[19] Thus, land-disturbing permit

obligations do not apply to:

> [a]gricultural operations . . . [which] include those practices involving the establishment, cultivation, or harvesting of products of the field or orchard; farm ponds; dairy operations; livestock and poultry management practices (specifically *excluding the raising and/or boarding of horses*); and the construction of farm buildings.

Ordinance 73, Sec. III (5) (emphasis supplied). Accordingly, this exemption did not

apply in the instant case, which involved the operation of an equestrian center. An

exception also exists from the requirements of a land disturbance permit to:

> Any project involving less than one acre of disturbed area; provided, however, that this exemption shall not apply to any land disturbing activity within a larger common plan of development or sale with a

---

[19]

This language is almost identical to a provision contained in the State Erosion and Sedimentation Act, OCGA § 12-7-1 et seq., upon which Ordinance 73 was modeled. "Land-disturbing activity" means any activity which may result in soil erosion from water or wind and the movement of sediments into state water or onto lands within the state, including, but not limited to, clearing, dredging, grading, excavating, transporting, and filling of land but not including agricultural practices as described in paragraph (5) of Code Section 12-7-17.

OCGA § 12-7-3 (9).

planned disturbance of equal to or greater than one acre *or* within 200 feet of the bank of any State Waters[.]

Ordinance 73, Sec. III (8) (emphasis supplied).

(a) The County highlights that the superior court primarily based its reversal of the ZBA's ruling with respect to the need for a land disturbance permit on Petitioner's statement that the dirt was brought onto the Property with the intent of top dressing the paddock to grow grass. In doing so, the County contends the superior court improperly determined that Briggs's hearsay testimony that the hauling contractor told him the dirt was going to be stockpiled on the Property was not competent evidence on which the ZBA could base its decision.

At the ZBA hearing, Briggs testified that he observed four piles of dirt on the Property, and was informed by a hauling contractor that more dirt was coming. Briggs described that the hauling contractor, who did not testify at the hearing, told him the dirt was being stockpiled on the Property. As Briggs was speaking with the contractor, three additional dump trucks filled with dirt pulled up at the Property. Petitioner countered that the dirt had been transported to the Property with the intent of top dressing a 0.3 acre portion of a horse paddock to grow grass and it did not need a permit for that purpose. Specifically, Petitioner contended that the paddock was

"overgrazed and overused," and "record saturating rains and two named storms" had adversely affected the pasture. Petitioner further represented that it had completed that exact use of dirt for grassing on adjacent paddocks. Notably, Petitioner never disputed that piles of dirt were being transported onto the Property.

In its original order reversing the ZBA, the superior court stated that an ambiguity exists with respect to Ordinance 73, in that it is unclear "whether the addition of top soil and grass seed, as contemplated in this action, falls within the ambit of 'land-disturbing activity.'" In its order denying the County's motion for reconsideration, the court specified that Briggs's testimony before the ZBA — regarding what the hauling contractor had told him — constituted inadmissible hearsay. As a result, the court concluded that the only "competent evidence" in the record was that put forth by Petitioner that it intended to have topsoil delivered to the Property in order to lay grass to the horse paddock. As previously explained in Division 2, to the extent the superior court rejected Briggs's unobjected-to testimony as inadmissible hearsay, the court erred in light of the 2013 revisions to the Evidence Code applicable here.

Due to the presence of conflicting evidence in the record, the ZBA, as the factfinder and judge of witness credibility, was authorized to reject Petitioner's claim

26

and find that the dirt was being stockpiled on the Property based on the County's evidence. See *Glass v. City of Atlanta*, 293 Ga. App. 11, 14 (1) (666 SE2d 406) (2008) (civil service board authorized to discount petitioner's evidence, to find the evidence against him more credible, and to affirm his employment termination). In its order reversing the ZBA's decision, the superior court improperly took on the roles of factfinder and judge of witness credibility by reweighing the evidence and concluding as a matter of fact that Petitioner, based on his testimony, intended to have topsoil delivered to the Property in order to lay grass seed to his horse paddock. See *DeKalb County v. Bull*, 295 Ga. App. 551, 552 (1) (672 SE2d 500) (2009) ("Neither the superior court nor this Court reweighs credibility determinations of the factfinder.") (citation and punctuation omitted).

(b) Even assuming that Briggs's testimony concerning the stockpiling of the dirt properly was admitted, as noted by the superior court in its order denying the County's motion for reconsideration, the ZBA was still tasked to consider whether Petitioner qualified for an exemption to the permit requirements of Ordinance 73 based on if the tract was less than one acre in size and more than 200 feet from State Waters.

At the ZBA hearing, Inspector Pruitt identified State Waters on the Property and estimated that the dirt was 150 feet away from the bank. Based on this information, Pruitt issued a stop work order on December 28, 2017, because, among other things, Ordinance 73 requires a land disturbance permit to transport dirt onto a site within 200 feet from State Waters even if the tract is less than one acre in size. The following exchange took place at the ZBA hearing:

[ZBA Member]: How close to the marsh was the dirt?

[Pruitt]: I did not measure it.

[ZBA Member]: Give me an estimate.

[Pruitt]: It was 150 feet from the actual, probably the actual bank of the marsh.

The superior court concluded that Pruitt's testimony was "speculative at best," and thus, did not qualify as "competent evidence" upon which the ZBA could base its decision. Specifically, the court stated that there was no indication that Pruitt actually measured the distance between the water and the piles of dirt on the Property.

On appeal, the County asserts that the superior court misapplied the "any evidence" standard by disregarding Pruitt's testimony regarding the presence of State

Waters and the distance from the dirt to the bank of the State Waters. In the first instance, a review of the ZBA hearing indicates that Petitioner did not object to Pruitt's testimony, nor did it present any evidence to challenge Pruitt's estimate that the piles of dirt were within 200 feet of the bank based on his first-hand observations at the Property. Although the superior court discounted Pruitt's "speculative testimony" based on the fact that Pruitt did not measure the distance from the water[20] to the dirt, absent any evidence contradicting his estimate, the court could not substitute its own findings in place of that found by the ZBA. See *Underwood v. Lowery*, 133 Ga. App. 629, 630 (212 SE2d 5) (1974) ("Where no exact measurement is taken, evidence as to size, like evidence of speed, is a sort of conclusion based on the opinion of the witness and drawn from the circumstances which he recollects."); *Harris v. Collins*, 145 Ga. App. 827, 828 (1) (245 SE2d 13) (1978) ("In respect to the opinion testimony as to speeds, time, and distance, it has been held many times that same is very unreliable, but, nevertheless, admissible."). As a result, the superior

---

[20] Petitioner asserts that there is a lack of evidence to show that the "marsh" located near the Property constitutes "State Waters" as defined in Ordinance 73. There is no indication that Petitioner raised this argument before the ZBA, and thus, we decline to address it for the first time on appeal. See *Fulton County v. Strickland*, 251 Ga. 473, 473 (2) n. 1 (306 SE2d 299) (1983).

29

court erred in discounting Pruitt's unobjected-to testimony and substituting its own opinion as to the distance between the dirt and the water.

4. The County contends that the superior court erred in concluding Ordinance 73 and its definitions of "land-disturbing activity" are ambiguous or vague, and then improperly applying an interpretation standard applicable to zoning ordinances.[21]

The superior court concluded that an ambiguity exists in Ordinance 73, namely, "whether the addition of top soil and grass seed, as contemplated in this action, falls within the ambit of 'land-disturbing activity.'" The court then proceeded to resolve this ambiguity in favor of Petitioner, as the landowner, citing to cases interpreting zoning ordinances.

Pretermitting whether case law involving zoning ordinances applies in the instant case, as discussed in Division 3, the superior court erred in substituting its own credibility determinations in rejecting testimony presented by the County to show that Petitioner was stockpiling dirt on the Property without a land disturbance permit and accepting Petitioner's testimony that he intended to use the topsoil

---

[21] The County repeats this claim in Case Nos. A20A1811 and A20A1813.

delivered to the Property in order to lay grass seed to his horse paddock.[22] See *Glass*, 293 Ga. App. at 14 (1) ("Even evidence which barely meets the 'any evidence' standard is sufficient, and the presence of conflicting evidence nonetheless meets that standard.") (citation and punctuation omitted).

5. The County asserts that the superior court erred in discounting Inspector Pruitt's testimony based on his alleged trespass to gain access to the Property.[23] In its order denying the County's motion for reconsideration, the superior court explained that even if it accepted Pruitt's testimony regarding the presence of State Waters and his estimate on the distance from the dirt to the bank of the State Waters, "it would violate public policy to allow a county code enforcement officer to enforce a county ordinance while gaining evidence of the alleged code violation based upon a trespass onto private property." At the hearing before the ZBA, Pruitt admitted that, on a previous visit to the Property (prior to the imposition of the first stop work order), he

---

[22] As the superior court itself acknowledged in its order denying the County's motion for reconsideration, if the court had permitted "the admission and consideration of Briggs'[s] hearsay testimony, then, arguably, an as-applied ambiguity of Ordinance 73 would *not* exist. That is because stockpiled soil would be considered a land-disturbing activity under the ordinance."

[23] The County repeats this claim in Case Nos. A20A1811 and A20A1812.

31

crawled through a fence to gain entry and take photographs, including one that purported to show State Waters on the Property. Based on this testimony, the superior court indicated that it "cannot ignore the violation of [Petitioner's] private property rights."

At the ZBA hearing, Petitioner elicited testimony from Briggs confirming that Petitioner had indicated that no County personnel were allowed to enter the Property absent permission. However, Petitioner did not object to the admissibility of Pruitt's testimony on Fourth Amendment grounds before the ZBA, as it later did in the superior court, based on how Pruitt gained access to the Property, and therefore, this issue is waived. See *York*, 348 Ga. App. at 64 ("When a party seeks certiorari review in the trial court of a decision of an administrative body acting in a quasi-judicial capacity, the trial court is bound by the facts and evidence presented to the administrative body, and the issue of standing is waived if it was not raised before the administrative body."). To the extent the superior court discounted Pruitt's testimony based on how he accessed the Property, it erred.

Based on the foregoing, we conclude that the superior court erred in reversing the decision of the ZBA in Case No. A20A1810, which had upheld the imposition of the County's first stop work order on the Property.

32

6. The County asserts that the superior court erred in failing to address the UDC's requirement that submitted applications for land disturbance permits include an erosion plan.

In this case, after the imposition of the two stop work orders, the County informed Petitioner that it needed to submit an Erosion and Sedimentation and Pollution Control Plan in order to obtain a land disturbance permit for the Property. As relevant here, pursuant to UDC § 7-1.1:

> No person shall commence excavation, grading, filling, cutting, stripping, clearing or grubbing unless and until he has a valid land disturbance permit issued pursuant to the soil erosion and sediment control ordinance (Ordinance 73), by the planning and community development department, unless expressly excepted therefrom.

Section V, B (2) of Ordinance 73 in turn requires that:

> The application for a [land disturbance] [p]ermit *shall* be submitted to the Local Issuing Authority and *must* include the applicant's Erosion, Sedimentation, and Pollution Control Plan with supporting data, as necessary to allow the Local Issuing Authority to evaluate.

In reversing the ZBA on this issue, the superior court summarily concluded "a permit was not required to add top soil and grass seed to [ ] Petitioner's [P]roperty." The

33

court never addressed the UDC's requirement with respect to a land disturbance permit. Rather, as previously discussed in Division 3, the superior court improperly discounted testimony from the County's witnesses and concluded as a matter of fact that Petitioner, based on its representations, intended to have topsoil delivered to the Property in order to lay grass seed to a horse paddock. Because there is evidence in the record to support the ZBA's conclusion that the dirt was being stockpiled on the Property, thereby requiring that Petitioner obtain a land disturbance permit, the superior court erred in reversing the ZBA's holding that Petitioner was required to submit an erosion plan with its permit application at issue in Case No. A20A1811.

*Case No. A20A1812*

7. The County argues that the superior court erred in concluding that the second stop work order was issued based on the electrical utility work on the Property.[24] According to the County, the superior court's reference to the applicability of the MRPA to electrical utility work addressed an issue that was not before the ZBA.

---

[24] The County repeats this claim in Case Nos. A20A1811 and A20A1813.

34

In reversing the ZBA on the imposition of the second stop work order, the superior court concluded that the "MRPA does not require the landowner to obtain a permit in order to add topsoil or grass on a horse stable located within a MRPA zone. Nor does MRPA require a permit for the landowner to install an electrical utility line." The court continued that, even if the addition of top soil and seed constituted a land-disturbing activity, "the only evidence to support the [ZBA's] conclusion that Petitioner's addition of top soil to the [P]roperty somehow violated [the] MRPA, came from the testimony of [Pruitt]," which the court discounted as "speculative" and not "competent evidence."

> In enacting the MRPA, OCGA § 12-5-440 et seq., the General Assembly intended to create a statutory and regulatory framework that would protect major streams in certain metropolitan areas from pollution, erosion, and over-intensive development, among other problems.

*Kohler v. Van Peteghem*, 330 Ga. App. 230, 240 (4) (767 SE2d 775) (2014) (citation and punctuation omitted), overruled on other grounds by *Lee v. Smith*, 307 Ga. 815, 822-823 (2) (838 SE2d 870) (2020).[25] The Georgia Mountains Regional Commission

---

[25] The parties do not dispute that the Property is located within the MRPA river corridor for the Chattahoochee River.

is the government body tasked with implementing the MRPA in Forsyth County. See *Kohler*, 330 Ga. App. at 240 (4) ("regional commissions that have been established for the aforementioned metropolitan areas are charged with the preparation and adoption of comprehensive, coordinated land and water use plans for stream corridors") (citations and punctuation omitted). Similar to Ordinance 73, the MRPA defines "land-disturbing activity" to include "scraping, plowing, clearing, dredging, grading, excavating, transporting, or filling of land or placement of any structure or impervious surface, dam, obstruction, or deposit." OCGA § 12-5-441 (10). "When property is located within the area prescribed by the MRPA, any building or land disturbance has to be accomplished through a permitting process . . . ." *Threatt v. Fulton County*, 266 Ga. 466, 468 (467 SE2d 546) (1996).

Again, for the reasons already discussed in Division 3, the superior court erred by improperly assuming the roles of factfinder and judge of witness credibility. Here, the court essentially re-weighed the evidence and then concluded as a matter of fact that Petitioner, based on its representations, intended to have topsoil delivered to the Property in order to lay grass seed to his horse paddock, while discounting conflicting evidence presented by the County that Petitioner was stockpiling dirt in an area covered by the provisions of the MRPA.

36

Additionally, a review of the record shows that the County did not issue the second stop work order due to the electrical utility trenching a ditch to bury a power line on the Property.[26] Rather, at the ZBA hearing, Brown, in his capacity as Director of the County's Department of Planning and Community Development testified that he requested the second stop work order because he received information from Briggs that truckloads of dirt were being brought onto the Property without explanation for the use of the dirt and whether that use complied with the MRPA. Brown further explained that the County entered the second stop work order based on concerns that the County's engineering department could lift the first stop work order without verification as to whether Petitioner was in compliance with the MRPA. To the extent the superior court reversed the ZBA's decision based on the court's assessment that the second stop work order was issued due to electrical utility work, it erred.[27]

---

[26] In fact at the ZBA hearing, while discussing the first stop work order, County Inspector Pruitt acknowledged that an utility company can trench a ditch without the need for a permit.

[27] To the extent the superior court's order reversing the ZBA in Case No. A20A1812 can be read as finding an ambiguity in the MRPA's definition of a land-disturbing activity, as suggested by the County in its brief, we hold this finding to be in error for the same reasons already outlined in Division 4 of this opinion.

Based on the foregoing, we find the superior court erred in reversing the ZBA's decision upholding the County's issuance of the second stop work order at issue in Case No. A20A1812.

*Case No. A20A1813*

8. Finally, the County contends that the superior court erred by failing to address the UDC's prohibition against issuing a building permit when a stop work order has been placed on a property.

As relevant here, UDC § 5-3.6 states:

> The [Director of the County's Department of Planning and Community Development] . . . [is] hereby authorized and directed to deny and withhold permits on any new project or applicant pursuant to this Code where the applicant, applicant's business or agent has failed or refused to comply with County requirements or regulations specified by this Code or any other codes administered by the [D]irector[.]

The County denied Petitioner's application for a building permit to build a custodial residence on the Property based on the two pending stop work orders, which the ZBA affirmed. In reversing this holding, the superior court reiterated that Petitioner was not required to obtain a land disturbance permit to add top soil and grass seed to a horse paddock on the Property, and thus, the stop orders were invalid and not a proper

basis to deny the building permit. Again, as previously discussed in Division 3, however, the superior court improperly assumed the roles of factfinder and judge of witness credibility by reweighing the evidence and concluding as a matter of fact that Petitioner, based on his testimony, intended to have topsoil delivered to the Property. Because there was evidence to support the ZBA's finding that Petitioner was stockpiling dirt on the Property within 200 feet of State Waters without a permit, the ZBA did not err in upholding the issuance of the two stop work orders. Based on the language of UDC § 5-3.6, it necessarily follows that the ZBA properly affirmed the County's decision to reject Petitioner's application for a building permit due to the two stop work orders in effect on the Property at that time.

Based on the foregoing, we conclude that the superior court erred in reversing the Board's decisions in all four appeals.[28] See *DeKalb County*, 295 Ga. App. at 555 (1) (a).

---

[28] Petitioner argues that the appeals are moot because the piles of dirt have been removed from the Property in compliance with the stop work orders. Based on the record before us, the first stop work order, based on Petitioner's failure to obtain a land disturbance permit for the piles of dirt, assessed a $1,000 fine. There is no indication that Petitioner has paid this fine, or that the stop work orders have been lifted.

*Judgments reversed in Case Nos. A20A1810, A20A1811, A20A1812, A20A1813. Barnes, P. J., and Pipkin, J., concur.*